370 S.E.2d 341

**MOUNDSVILLE HOUSING AUTHORITY**

v.

**Irene PORTER.**

**No. 17935.**

Supreme Court of Appeals of West Virginia.

June 2, 1988.

Nan C. Brown, W.V. Legal Services Plan, Wheeling, John Purbaugh, W.V. Legal Services Plan, Charleston, for Irene Porter.

Robyn Ruttenberg, Robinson & Dickinson, Wheeling, for Moundsville Housing Authority.

PER CURIAM:

The appellant, Irene Porter, appeals from a final order of the Circuit Court of Marshall County entered on October 23, 1986. The effect of the court's order was to evict the appellant from her home. For the reasons set forth below, we reverse.

The appellant is a tenant in a federally subsidized low-income housing project owned and operated by the Moundsville Housing Authority (MHA). When the appellant moved into her apartment located at 72 Dorsey Street in Moundsville she entered into a rental agreement which provided for a month to month tenancy. The lease was entered into on September 6, 1985.

During the night of June 3, 1986, the appellant was awakened from sleep and beaten by her live-in companion, Jack Kleinedler. The appellant reported the incident to the police some time later that same night. She was subsequently taken to the hospital for treatment and Mr. Kleinedler was arrested.

Two days later, the appellant received an eviction notice from the executive director of the Moundsville Housing Authority. Apparently the appellant found the terms of a grievance procedure provided for by the federal government to be less than acceptable, and it was agreed that the matter would be settled in court.

On July 25, 1986 the director of the housing authority (MHA) filed a petition against the appellant pursuant to *W. Va. Code,* 55–3A–1 *et seq.,* [1983] for summary relief for wrongful occupation of residential property. It was alleged in the petition that the appellant had breached a warranty or leasehold covenant by failing to pay a miscellaneous work order in the amount of $56.19, and by failing to vacate the apartment when ordered to do so.

A hearing on the petition was held in the Magistrate Court of Marshall County on August 4, 1986. Both parties appeared *pro se.* After hearing testimony, the court entered judgment in favor of the housing authority and ordered the appellant to vacate her apartment and pay court costs in the amount of $28.12. The appellant appealed to the circuit court and a hearing was held on October 3, 1986. Again, both parties appeared without benefit of counsel.

The only issue upon which evidence was presented was whether the appellant had violated the terms of the lease by allowing the disturbance with Mr. Kleinedler to occur. At the conclusion of the hearing, the court found that the appellant had violated the terms of her lease and that the housing authority was entitled to possession of the premises. The court later entered a final order holding that the appellant had committed a serious violation of Part B.(7)(e) and Part B.(7)(f) of the lease. The appellant subsequently obtained counsel and appealed to this Court.

Part B.(7)(e) of the lease agreement appellant signed requires the tenant to "pay reasonable charges (other than for wear and tear) for the repair of damages to the premises, project building, facilities or common areas caused by tenant, tenant's household or guests in accordance with a schedule of charges as may be posted in the Management Office ..." A review of the hearing transcript indicates that there was no evidence presented as to the failure of the appellant to pay for repair of damages nor was the issue even raised at the hearing. We find, therefore, that the court's finding on this point was clear error. The appellee agrees.

The court also found that the appellant had violated Part B.(7)(f) of the lease which requires the tenant to "conduct himself or herself, and cause other persons who are on the premises with Tenant's consent to conduct themselves in a manner which will not disturb Tenant's neighbors' peaceful enjoyment of their accommodations and will be conducive to maintaining the project in a decent, safe and sanitary condition; ..."

The evidence at the hearing was that the executive director of the housing authority, Jeffrey McCheskey, had received one written complaint and several telephone calls from other residents in the building concerning the disturbance of June 3, 1986.

The appellant testified that her neighbors told her that they were not disturbed by the altercation. She also testified that Mr. Kleinedler no longer lived with her.

The lease signed by appellant provides that "[m]anagement shall not terminate or refuse to renew this Lease other than for serious or repeated violation of material terms of the Lease such as failure to make payments due under the Lease or to fulfill the Tenant obligations set forth herein, or for other good cause."

After reviewing the record in this case, we must conclude that the housing authority's evidence did not show that the appellant had committed an act amounting to a serious violation of a material term of the lease. Nor was there any evidence that this disturbance was a repeat occurrence. Although the appellant should have taken steps to keep Mr. Kleinedler from the premises, her failure to do so, the result of which was her beating and the ensuing disturbance, did not rise to the level of seriousness necessary for her eviction from her home. Nor are we of the view that this one disturbance constituted good cause under the lease for her eviction when there was no evidence presented that the appellant was otherwise a troublesome tenant.

" 'When the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review.' Syl. pt. 4, *Smith v. Godby*, 154 W.Va. 190, 174 S.E.2d 165 (1970)." Syllabus Point 1, *George v. Godby* [174] W.Va. [313], 325 S.E.2d 102 (1984).

Although there is no evidence of repeated disturbances or a pattern of anti-social behavior by the appellant, the history of subsidized housing projects puts us on notice that it is easy for a public housing project to become a violent, dangerous slum unless the management are careful to require responsible behavior of tenants.[1] However, one isolated incidence of boisterous behavior—particularly boisterous behavior beyond the control of the lessee—is not sufficient to justify the termination of a valuable contractual right. In this regard, the court is particularly impressed with the fact that the companion who caused the disturbance no longer lives on the premises and the tenant made reasonable efforts herself to sustain the quality of the neighborhood.

Accordingly, the judgment of the Circuit Court of Marshall County is reversed.

Reversed.

---

1. *See, e.g.,* Housing and Community Development Act of 1980, Pub.L. No. 96–399, 94 Stat. 1614 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 3506. *See also Perez v. Boston Housing Authority,* 379 Mass. 703, 400 N.E.2d 1231 (1980); *Perez v. Boston Housing Authority,* 368 Mass. 333, 331 N.E.2d 801, *appeal dismissed,* 423 U.S. 1009, 96 S.Ct. 440, 46 L.Ed.2d 381 (1975).