AMERICAN PROPERTY MANAGEMENT COMPANY, d/b/a De Kalb Plaza Apartments, Plaintiff-Appellee, v. SHIRLEY GREEN-TALAEFARD, Defendant-Appellant.

Second District   No. 2—89—0590

Opinion filed March 15, 1990.

Anne S. Quincy, Jerry Brask, and Sarah Megan, all of Prairie State Legal Services, of Batavia, for appellant.

James R. Buck, of Klein, Stoddard & Buck, of Sycamore, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, Shirley Green-Talaefard, appeals from the trial court's order granting possession and a money judgment to the defendant's landlord, the plaintiff American Property Management Company, d/b/a De Kalb Plaza Apartments. On appeal, the defendant contends that the plaintiff improperly terminated the defendant's Federal housing assistance, which resulted in her ultimate inability to pay her rent and her subsequent eviction. We reverse the judgment and remand the cause with directions.

The following facts were adduced at a bench trial on the plaintiff's complaint in forcible entry and detainer. The proceedings were not transcribed; however, the parties have supplied the appellate court with a stipulated bystander's report. At trial the plaintiff presented the testimony of Lon VanOuwerkerk, who managed De Kalb Plaza Apartments for the plaintiff; Scott Clausen, the assistant manager; and Stephanie VanOuwerkerk, Lon's wife and the plaintiff's bookkeeper at the De Kalb Plaza facility. The defendant testified in her own behalf.

According to Lon, approximately 30 units in the De Kalb Plaza are subsidized under a Federal housing-assistance program adminis-

tered by the Department of Housing and Urban Development (HUD) (see 42 U.S.C. §1437f (1989 Supp.)). The defendant has been a tenant in one of those such subsidized units since approximately October 1985.

The defendant was tendered a new lease on February 14, 1989, effective March 1, 1989, which called for a monthly rental payment of $287. Lon stated that defendant failed to make the full rental payment for March 1989, within the 10-day grace period provided in the lease, so he delivered a notice to her that her tenancy was terminated due to nonpayment. The defendant failed to make a rental payment in April, and the plaintiff commenced the instant action against her on April 13, 1989.

The parties each produced leases which preceded the lease which became effective March 1, 1989. Plaintiff's exhibit No. 3, effective June 1, 1988, included the defendant's signature and that of her husband, Hadi Talaefard. Defendant's exhibit No. 1, effective January 1, 1989, is signed only by the defendant, as is the lease effective March 1, 1989.

Paragraph three in each lease provides, in pertinent part:

"3. *Rent*: *** Tenant agrees to pay the monthly rent set forth in column (1) above on the date the rent is due at the Owner's address set forth above. The Owner certifies that HUD has authorized him/her to collect the type of charges shown in column (1) and that the amounts shown in column (1) do not exceed the amounts authorized by HUD. The Tenant understands that this monthly rent is less than the market (unsubsidized) rent due on this unit. This lower rent is available *** because HUD makes monthly payments to the Owner on behalf of the Tenant. The amount, if any, that HUD makes available monthly on behalf of the Tenant is called the tenant assistance payment and is shown on the 'Assistance Payment' line of the *Certification and Recertification of Tenant Eligibility Form* which is attachment A No. 1 to this Agreement." (Emphasis in original.)

Column 1 on each of the three leases provides for a monthly rental payment of $287 due on the first day of the month. None of the three leases submitted into evidence includes Attachment No. 1 as referred to in paragraph 3; however, the lease effective June 1, 1988, includes the following notation in a box entitled "Additional Agreements & Covenants:"

"HUD $228.00
Tenant 59.00."

The lease effective January 1, 1989, contains a similar legend reading: "Res $90.00[,] HUD $197.00." The lease effective March 1, 1989, contains no such legend.

The defendant also submitted a rental application executed by her husband on July 16, 1988. In it he provided information concerning his current employer and approximated his net monthly salary. The defendant testified that her husband was added as a signatory to her lease in June 1988 at his request.

On November 30, 1988, Stephanie VanOuwerkerk, plaintiff's bookkeeper, prepared a HUD Tenant Eligibility Form in which she calculated defendant's income status and the assistance payment the defendant would receive from HUD. Stephanie categorized the defendant's income status as "very low" and calculated the defendant's portion of the rent at $90, with an assistance payment of $197. The form further indicates that the defendant's next annual recertification was to be effective January 1, 1990. The defendant certified the information contained in the Tenant Eligibility Form by signing it on December 2, 1988, simultaneous with her execution of the lease which became effective January 1, 1989. The defendant testified that she requested that her husband be left off the lease since he was not living with her.

On January 16, 1989, Lon delivered to the defendant a form purporting to be a notification of rent change. It provided as follows:

"This is to notify you that on the basis of information obtained by the De Kalb Plaza management, your rent has been adjusted to $287.00. This new rent rate is effective March 1st, 1989. This notification amends paragraph 3 of your lease agreement which sets forth the amount of rent you pay each month.

Please come by the office no later than January 26th, 1989 to sign your new lease and to discuss this change."

The defendant and her husband met with Lon and Scott Clausen on January 26, 1989, to discuss the notice. On cross-examination Lon admitted that no new certification on defendant's income had been prepared in support of the lease effective March 1, 1989. He further admitted that although paragraph 17(a)(1) of the lease required HUD's approval for the termination of a tenant's rental subsidy, he had not obtained such approval. He stated, however, that he had received a directive from HUD permitting the termination of such subsidies without HUD approval in cases of fraud or where management believed the tenant had not provided all of the information requested by management.

Lon did not produce the alleged HUD directive. Lon further

stated that although the January 16, 1989, notice did not explicitly state that the defendant's HUD rental subsidy was being terminated, such termination was clear from the language of the notice. Lon further testified that at the January 26 meeting, the parties made no specific reference to the termination of the defendant's rental subsidy and that no other meetings took place between the parties.

Testifying for the plaintiff, Scott Clausen, the assistant manager at De Kalb Plaza, stated that he was present at the meeting with the defendant and her husband on January 26, 1989. He stated that the parties discussed the change in rent and indicated that management's concern was the defendant's husband's actual residence, his income, and his contribution to the support of the defendant. According to Clausen, sometime after the January 26 meeting the defendant provided him with a notarized statement from an individual named Hassan Azarpira. It was dated January 30, 1989, and stated that Hadi Talaefard, the defendant's husband, had been living with him for the past five months, seeking employment in the Chicago area. The plaintiff submitted this document as well as a claim eligibility notice from an Illinois unemployment compensation office which indicated that Hadi Talaefard was "ineligible due to wages" for unemployment benefits.

Both Lon and Clausen stated that the defendant told them Talaefard was not living with her; however, both testified that they continued to see Talaefard in and around the apartment complex throughout January 1989. Clausen further testified that he directed a mailman to deliver Talaefard's mail to defendant's mailbox.

The defendant testified that although she and Talaefard were married in December 1987, the couple had never lived together. She stated that she and her children had lived in apartment 502A at De Kalb Plaza Apartments for approximately four years and that she was employed at Northern Illinois University as a secretary. According to the defendant, Talaefard visited her often and had stayed with her two to four evenings a week through January 1989. She denied that her husband ever lived with her at the De Kalb Plaza Apartments on a continuous basis. She further stated that she was unaware of his current whereabouts.

The defendant testified that she received the notification of rent change, that she read it, and that she attended a meeting on January 26, 1989, concerning the notice. She stated, however, that she did not understand she was to pay the full amount of rent. On February 14, 1989, defendant signed a new lease effective March 1, 1989. On March 2, 1989, she tendered $90 to Lon, who refused to accept it and

demanded payment of the full amount of the rent. Lon delivered a notice of termination of tenancy to the defendant on March 10, 1989, and subsequently commenced the forcible entry and detainer action against her.

At trial, defendant's counsel attempted to submit photocopies of Federal housing regulations as well as excerpts of provisions of the HUD handbook which she stated were applicable to the Federal housing subsidy program at issue. The plaintiff objected to the submission of those documents, and, despite defense counsel's argument that the trial court was required to take judicial notice of the Federal regulations, the trial court sustained the plaintiff's objection.

In closing argument, plaintiff's counsel asserted that the defendant had executed a new lease, had failed to pay the required rent, had been appropriately notified of the termination of her tenancy, and had failed to resolve the dispute with her landlord. Plaintiff's counsel further asserted that the defendant's allegations concerning the plaintiff's failure to properly terminate the defendant's rental subsidy were immaterial to the plaintiff's complaint.

Defendant's counsel argued that the defendant's housing assistance had not been properly terminated pursuant to the parties' lease and that the plaintiff's termination of the defendant's housing assistance violated defendant's due process rights. Defendant's counsel further argued that each lease in evidence contained identical language requiring HUD's approval, which plaintiff failed to obtain, to terminate a tenant's housing assistance.

Relying on basic landlord-tenant law, the trial court found that rent of $287 was due, that the defendant had failed to pay the rent, and that the plaintiff was entitled to possession. The court did not address the issue of the propriety of the termination of the defendant's housing-assistance subsidy. The court subsequently denied the defendant's amended post-trial motion to vacate the judgment but, upon the parties' agreement that the defendant pay the full rent during the pendency of this appeal, granted the defendant's oral motion for a stay of execution of the judgment pending appeal. The defendant's timely appeal ensued.

The plaintiff contends that the instant cause involves no more than a tenant's failure to pay her rent and the landlord's concomitant right to evict her for this failure. It is apparent from the record, however, that the plaintiff's unilateral termination of the defendant's housing-assistance benefits directly resulted in the defendant's inability to pay her rent. In short, the plaintiff's conduct brought about defendant's alleged breach. Thus, the issue before us is not simply

whether plaintiff properly terminated defendant's lease but, rather, whether defendant's failure to pay rent, under the circumstances presented, constitutes cause for such termination.

■ In order to resolve this matter, we must consider an issue the trial court failed to address, *i.e.*, the propriety of the plaintiff's unilateral termination of the defendant's housing-assistance benefits. At the outset, we note that the defendant has a property interest in the continued receipt of such benefits, which may not be terminated without regard for the defendant's due process rights. See *Holbrook v. Pitt* (7th Cir. 1981), 643 F.2d 1261, 1277-78.

■ Plaintiff apparently concedes that the defendant has a property interest in her entitlement to the continuation of housing-assistance benefits but claims that the defendant has waived her due process rights by failing to assert them at the trial level. Our review of the record satisfies us that the defendant sufficiently invoked her due process claims both in her closing argument at trial and in her post-trial motion.

■ We now consider whether the defendant was accorded due process prior to the termination of her housing-assistance benefits. The plaintiff correctly states that due process "is a flexible concept that requires such procedural protections as the particular situation demands" (*Holbrook*, 643 F.2d at 1280). In *Holbrook*, the United States Court of Appeals for the Seventh Circuit enumerated several factors the court must weigh in its due process determination, including: (1) the private interest to be affected by the termination of the entitlement; (2) the risk of erroneous deprivation; and (3) the burden on the governmental entity to provide varying degrees of procedural safeguards. 643 F.2d at 1280, citing *Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903.

Clearly, the private interest at stake is significant: as a practical matter, defendant's loss of housing-assistance benefits may result in her and her children's loss of their shelter.

■ In order to weigh the next factor, *i.e.*, the risk of erroneous deprivation of housing-assistance benefits, we must consider the procedural safeguards actually used by the plaintiff in the instant matter. The Supreme Court has stated that notice and the opportunity to be heard are essential in order to accord due process to an individual faced with a significant loss. (*Mathews*, 424 U.S. at 348, 47 L. Ed. 2d at 41, 96 S. Ct. at 909.) Indeed, the parties' leases of June 1, 1988, January 1, 1989, and March 1, 1989, provide these basic elements of due process in paragraph 4, "Changes in the Tenant's Share of the Rent," and paragraph 17, "Termination of Assistance."

Paragraph 4 provides, in part:

"The Owner agrees to implement changes in the Tenant's rent or rental assistance payment *only in accordance with* the time frames and administrative procedures set forth in *HUD's handbooks, instructions and regulations* related [*sic*] to administration of multifamily subsidy programs. \*\*\* The Notice [of changes in the tenant's rent or tenant assistance payment] will state the new amount the Tenant is required to pay, the date the new amount is effective, and the reasons for the change in rent." (Emphasis added.)

Paragraph 17 authorizes the landlord to terminate a tenant's housing-assistance benefit if the tenant provides false information to the landlord for the purpose of obtaining such assistance or if the tenant fails to submit household composition and income information to the landlord in a timely manner. In either case, paragraph 17(b) provides:

"The Owner agrees to give the Tenant *written notice of the proposed termination*. The notice will advise the Tenant that, during the ten calendar days following the date of the notice, he/she may request to meet the Owner to discuss the *proposed termination of assistance*. If the Tenant requests a discussion of the *proposed termination*, the Owner agrees to meet with the Tenant." (Emphasis added.)

On January 16, 1989, as noted above, the plaintiff did provide defendant with notice of a change in her rent. The deficiency in this notice, however, is threefold. First, although the notice purports to amend paragraph 3 of the lease effective January 1, 1989, by changing the defendant's rent to $287 per month, paragraph 3 already provided for a monthly rent of $287 by virtue of its reference to column 1. In fact, column 1 provided for a monthly rent of $287 on all three of the leases submitted into evidence.

Second, nowhere does the notice state that the plaintiff proposed to terminate (or, as is the case here, had already terminated) the defendant's housing-assistance benefits. Although Lon, the plaintiff's manager, testified that the notice clearly implied that the defendant's benefits were being terminated since it stated her rent was being changed, the defendant testified she did not understand she was to pay the full rental amount.

Third, the notice is also deficient in its failure to state the reason or reasons for the "rent change." The notice merely states that the defendant's rent is being changed, "on the basis of information obtained by the \*\*\* management," when, in fact, Lon's testimony and

the plaintiff's appellate brief suggest that Lon terminated the defendant's benefits because she *failed* to provide necessary household composition and income information. In short, we determine that the plaintiff failed to give proper notice to the defendant that it had terminated her housing-assistance benefits.

The plaintiff's manager did meet with the defendant to discuss the notice. Lon testified, however, that at this meeting no specific reference was made to the termination of the defendant's benefits. Lon and Scott Clausen both stated that the meeting was focused on Hadi Talaefard, the defendant's husband, *i.e.*, where he was living, whether he had income, and whether he contributed to the defendant's support. Although Lon stated that the defendant never answered these questions, his testimony was contradicted by the defendant and by Clausen. The defendant stated that she told Lon and Clausen that her husband did not live with her; and shortly after the meeting she confirmed this statement by providing Clausen with the sworn statement of Hassan Azarpira. She also gave Clausen an unemployment form which confirmed that Talaefard had not earned wages from the named employer for four quarters, ending with the third quarter of 1988.

The record fails to disclose what, if any, effort the plaintiff made to confirm or disprove the information provided by defendant. We note further that although defendant's lease, effective January 1, 1989, provided for a monthly subsidy of $197 based on a HUD recertification procedure followed by plaintiff, Lon testified that he did not perform a new recertification for the lease effective March 1, 1989, which provided no subsidy. In other words, Lon terminated defendant's housing-assistance benefits without affording her any due process protection and failed to reconsider the termination when the defendant provided the information he had requested.

We find that in contrast to the severe hardship upon defendant resulting from the plaintiff's unilateral termination of her housing-assistance benefits, the burden on the plaintiff to employ procedural measures to safeguard the defendant's rights is minimal.

■ Our determination that plaintiff terminated defendant's housing-assistance benefits in violation of her due process rights is not affected by plaintiff's assertion that it had been authorized by HUD to proceed without HUD's approval. First, the plaintiff failed to produce the alleged directive containing the authority. Second, and more important, no matter what the directive said, it could not have authorized the plaintiff to terminate welfare tenants' housing benefits in the absence of proper procedure. A decision by HUD to give the

plaintiff the unreviewable right to cut off a tenant's benefits would clearly "offend[] the concepts of fairness and nonarbitrariness which are at the heart of the constitutional requirement of due process." *Holbrook*, 643 F.2d at 1279.

The plaintiff brought about defendant's breach of the March 1, 1989, lease by its improper termination of her housing-assistance benefits. Accordingly, the plaintiff is not entitled to possession of the unit or to a money judgment. Thus, we reverse the judgment of the circuit court. Further, we vacate the circuit court's order that the defendant pay the full monthly rental amount of $287 during the pendency of this appeal and remand the cause with directions that the circuit court calculate the amount which the plaintiff must refund to the defendant as a result of this order.

Reversed and remanded with directions.

DUNN and WOODWARD, JJ., concur.