AMERICAN APARTMENT MANAGEMENT COMPANY, INC., as Agent, Plaintiff-Appellant, v. VICKEY PHILLIPS, Defendant-Appellee.

First District (2nd Division)   No. 1—94—2259

Opinion filed July 11, 1995.—Rehearing denied July 27, 1995.

Richard W. Christoff, of Sanford Kahn, Ltd., of Chicago, for appellant.

Rebecca Zietlow and Richard M. Wheelock, both of Legal Assistance Foundation, of Chicago, for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff American Apartment Management Co., Inc. (American), filed this action for possession of an apartment pursuant to the forcible entry and detainer statute. The suit was predicated upon defendant Vickey Phillips' (Phillips') alleged breach of certain provisions of her lease. The circuit court granted Phillips' motion for summary judgment, and American appealed. For reasons that follow, we affirm.

On May 14, 1992, American as lessor and Phillips as lessee entered into a written lease agreement for the premises commonly described as 6358 South King Drive, Unit 2D, Chicago, Illinois. Phillips received federal rental assistance through the section 8 housing assistance program, administered by the United States Department of Housing and Urban Development (HUD). Under this program, she was required to pay approximately 30% of her income, approximately $48 per month, towards her rent, with HUD paying the remainder. Phillips lived in the apartment with her three children.

On March 25, 1993, Chicago police officers Stephen Nowells and Elgin Holt set up a surveillance on Phillips' apartment after receiving a complaint from a confidential informant of drug activity there. Their affidavits erroneously state that they did so on May 25, 1993. After watching the apartment for a period of time, and observing several people enter, the two officers asked for and were granted permission to enter. Inside they observed several persons in different rooms of the apartment and spoke with Phillips, who identified herself as the leaseholder. She told them that all the people in the apartment were her friends. While in the apartment, the officers observed a man lying on a bed and told him to stand up. When he did so, they observed a clear plastic bag containing several ziplock plastic bags containing white powder, which they suspected was cocaine. The officers placed this man, who identified himself as Eddie Haster, under arrest. Further investigation revealed that the white powder was crack cocaine, with an estimated weight of 10.5 grams and a street value of approximately $1,500.

In her affidavit, Phillips stated that she knew Haster as the cousin of her ex-boyfriend. Prior to March 25, 1993, she had associated with him only briefly. The visit he paid her on that day was the first and only time he paid a social visit to her apartment. Prior to

that day, she had no knowledge that Haster was involved with drugs in any way.

On June 7, 1993, American issued and served upon Phillips a 10-day notice of termination of tenancy, which stated that her lease had been breached in that, "On or about March 23, 1993 Chicago police raided your unit and confiscated crack cocaine from your unit, in violation of ¶13(B), ¶13(C) and ¶23(B) of your Lease." When Phillips failed to vacate the apartment pursuant to this notice, American filed this action for possession of the premises on June 23, 1993.

On October 14, 1993, Phillips filed a motion to dismiss, contending that American's suit must be dismissed as a matter of law because she did not know, or have reason to know, that the alleged violation of her lease would occur. On December 1, 1993, the circuit court denied her motion to dismiss.

On January 19, 1994, Phillips filed a motion for summary judgment, again asserting that she had no knowledge, nor any reason to know, that Haster possessed illegal drugs in her apartment. American filed its response to her motion on March 4, 1994, attaching the affidavits of police officers Nowells and Holt.

On April 13, 1994, the circuit court granted the motion for summary judgment. It found:

> "The uncontested facts and record as a whole establish that Defendant was not in violation of paragraphs 13(b), 13(c), or 23(b) of her lease, by virtue of paragraph 29 of her lease, which sets forth the specifics which define drug related activity, which paragraph is controlling."

The court stated "that plaintiff has not and did not comply with the requirements of the lease; and that the purported reason for terminating the tenancy of Vickey Phillips was not in compliance with the lease; and she was not in violation of ¶29 that I read, with ¶¶13(B), 13(C) and 23(B) of the lease." The court further stated that there was no lease violation because "there was no criminal activity on the part of the tenant in reference to drug-related criminal activity under 29(D)", and that the possession of cocaine by Phillips' guest did not amount to "an event whereby that plaintiff would have the right, under the lease, to terminate the tenancy".

On May 6, 1994, American filed a motion for reconsideration, which was denied by the circuit court on June 16, 1994. In its ruling on the motion, the court elaborated on its prior holding, stating:

> "The police never found any controlled substance upon her person or in her apartment that belonged to her. They found it upon the person of a person that was not a lessee of that premises that was a visitor and that under the law cannot be imputed to her."

The court further stated, "All you can prove is that some person in her apartment who didn't live there had drugs upon his person which were not hers."

On July 6, 1994, American filed a timely notice of appeal from the circuit court's orders granting Phillips' motion for summary judgment and denying its motion to reconsider entry of the judgment.

American asserts that the circuit court misconstrued the lease by excluding as grounds for the termination of tenancy the possession of a controlled substance by Phillips' guest in her apartment. It argues that while paragraph 29(d) defines specific conduct as "drug-related criminal activity," paragraphs 29(a) and 29(b) of the lease prohibit any criminal activity, including drug-related criminal activity, by a guest or other person under the tenant's control. It further argues that it was not required to prove Phillips' actual or constructive knowledge of the criminal conduct of her guest in order to terminate her lease and that, even if it was, there was a genuine issue of material fact raised as to Phillips' knowledge. According to American, therefore, the circuit court erred in granting summary judgment to Phillips.

Phillips responds that American waived its argument that she violated paragraph 29 of the lease and that paragraph 29 imposes vicarious liability upon her because American failed to raise those issues in its notice of termination and complaint and because it argued to the contrary in response to her motion for summary judgment. She further argues that the lease does not make her liable for the acts of her guests, about which she had no knowledge or any reason to know. Phillips also asserts that there is no genuine issue of material fact remaining in the case sufficient to defeat her motion for summary judgment.

■ Illinois law is clear that a lease is a contract subject to the law of contracts. (*Williams v. Nagel* (1994), 162 Ill. 2d 542, 555, 643 N.E.2d 816, 822, *cert. denied* (1995), 514 U.S. 1064, 131 L. Ed. 2d 558, 115 S. Ct. 1694; *Kerr Steamship Co. v. Chicago Title & Trust Co.* (1983), 120 Ill. App. 3d 998, 1005, 458 N.E.2d 1009, 1014.) A contract must be read in its entirety and effect given to each of its provisions. (*Continental Casualty Co. v. Polk Brothers, Inc.* (1983), 120 Ill. App. 3d 395, 401, 457 N.E.2d 1271, 1276.) Where there is any doubt or uncertainty as to the meaning of the language used in a lease, however, it should be construed most strongly against the drafter, in this case the lessor. *First National Bank v. G.M.P., Inc.* (1986), 148 Ill. App. 3d 826, 830, 499 N.E.2d 1039, 1042; *Windsor at Seven Oaks v. Kelly* (1983), 113 Ill. App. 3d 978, 980, 448 N.E.2d 251, 253.

Paragraphs 29(a) and 29(b) of the lease state:

"(a) The Tenant, any member of the Tenant's household, or a guest or other person under the Tenant's control shall not engage in or facilitate criminal activity, including, but not limited to, violent criminal activity or drug-related criminal activity.

(b) The Tenant, or any member of the Tenant's household, or a guest or other person under the Tenant's control, shall not permit the dwelling unit to be used for, or to facilitate, criminal activity, including, but not limited to, violent criminal activity or drug-related criminal activity."

Paragraph 29(d) defines "drug-related criminal activity" as:

"the illegal manufacture, sale, distribution, or use, or possession with intent to manufacture, sell, distribute or use, of a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))."

Paragraph 23(b)(1) of the lease states the lessor may terminate the tenant's lease for "material noncompliance," and paragraph 29(e) states:

"One or more violations of subsection a or subsection b of this Lease Section constitutes a substantial violation of the Lease and a material noncompliance with the Lease. Any such violation is grounds for termination of tenancy and eviction from the unit."

American interprets these lease sections to mean that Haster's possession of crack cocaine on the premises, while Phillips' guest, amounts to material noncompliance with the lease and is grounds for termination of tenancy and eviction. Phillips, on the other hand, points out that paragraphs 23(a) and (b) refer specifically to "a guest or other person *under the Tenant's control*" (emphasis added), and argues that because she neither knew about nor had reason to know about Haster's possession, he cannot be held to be under her control. The circuit court agreed with Phillips.

In *Chicago Housing Authority v. Rose* (1990), 203 Ill. App. 3d 208, 560 N.E.2d 1131, the Chicago Housing Authority claimed that the tenant had violated her lease by permitting her brother to place two guns in her apartment. (*Rose*, 203 Ill. App. 3d at 210, 560 N.E.2d at 1132.) The appellate court held that the circuit court properly instructed the jury that in that termination and eviction case, in order to find for the landlord,

"the jury had to find that the defendant knew or should have known of the presence of guns in her apartment. This instruction is consistent with the meaning of the term 'permit' as incorporated into the lease by way of CHA's regulations." (*Rose*, 203 Ill. App. 3d at 216, 560 N.E.2d at 1136-37.)

The court reasoned that the word "permit" in common usage means

to consent to expressly or formally, and construing the lease most strongly against the Chicago Housing Authority and in favor of the tenant the circuit court's instruction was appropriate.

American distinguishes *Rose* by pointing out that it concerned lease provisions that required the Chicago Housing Authority to prove that the tenant permitted the guest's conduct, and that the circuit court expressly decided the case based upon the lease. In this case, according to American, paragraph 29(a) of the lease makes Phillips liable for the criminal acts of her guests in violation of the lease, which acts are deemed to be a material breach by her.

In *Mid-Northern Management, Inc. v. Heinzeroth* (1992), 234 Ill. App. 3d 240, 599 N.E.2d 568, the landlord, manager of a federally subsidized building similar to the building in the present case, claimed that the tenant had violated her lease because of the repeated actions of her son, including his manufacturing a skate board ramp, squirting a water gun at a neighbor, and jumping from the second floor onto a mattress on the ground. (*Heinzeroth*, 234 Ill. App. 3d at 242-43, 599 N.E.2d at 570.) The appellate court found that the tenant could not be held accountable for her son's actions because "[t]here is no evidence that defendant was aware of any of these incidents or that she had reason to believe that her son might commit such acts." *Heinzeroth*, 234 Ill. App. 3d at 248, 599 N.E.2d at 573.

American distinguishes *Heinzeroth* by pointing out that the lease in that case did not make the tenant subject to eviction for the unlawful acts of a guest, as does the lease in this case, and that the lease in *Heinzeroth* required that the landlord prove that the tenant made or permitted noises or acts that would disturb other neighbors. American does not allege that Phillips permitted the illegal acts of her guest, merely that she is liable for them because her guests are by definition under her control.

In *Diversified Realty Group, Inc. v. Davis* (1993), 257 Ill. App. 3d 417, 628 N.E.2d 1081, the appellate court, in interpreting a lease provision identical to one in this case, found that the "materiality" and "good cause" language found in paragraph 23(b) precluded the landlord from evicting a tenant as a matter of contract law where the tenant was without any knowledge or fault for her guest's criminal conduct. In *Davis*, as here, police officers found a guest's illegal drug paraphernalia in the tenant's apartment, and the landlord attempted to evict the tenant because of that incident. (*Davis*, 257 Ill. App. 3d at 419, 628 N.E.2d at 1082-83.) As in this case, the tenant moved for summary judgment and submitted an affidavit stating that she did not know or have reason to know of the presence of the illegal contraband in her home. (*Davis*, 257 Ill. App. 3d at 419, 628

N.E.2d at 1083.) Also as in this case, the landlord responded with a police report of the arrest. (*Davis*, 257 Ill. App. 3d at 423, 628 N.E.2d at 1087.) The appellate court found nothing in that report that indicated that the tenant had any knowledge of the drug paraphernalia in her apartment, and concluded that it was a reasonable inference that the guest had concealed his illegal activity from her. (*Davis*, 257 Ill. App. 3d at 423, 628 N.E.2d at 1087.) Based on this evidence, the court found that the circuit court properly granted summary judgment to the tenant. *Davis*, 257 Ill. App. 3d at 423, 628 N.E.2d at 1087.

The appellate court stated:

> "While we believe that there is nothing generally inconsistent in holding a tenant 'responsible' for the acts of her guests, we think that, at a minimum, the language employed by paragraph 23(b) demands that [the leaseholder] *herself* have some minimum connection with the unlawful conduct before there can be said to be 'good cause' to evict her." (Emphasis in original.) *Davis*, 257 Ill. App. 3d at 422, 628 N.E.2d at 1086.

American attempts to distinguish *Davis* by pointing out that in that case the tenant was not present in her unit at the time the police found cocaine in a duffel bag. This is a distinction without a difference, however. In this case, even if Phillips had not been present in the apartment at the time the police arrested her guest, she would have been equally responsible for his actions under the lease when she was not present so long as he was her guest and under her control. American also points out, however, that in *Davis* the lease demanded that the tenant have some minimal connection with the illegal contact, and that no such connection is required here.

In *Rose*, once the landlord showed that there were guns in the tenant's apartment, a rebuttable presumption arose that the tenant knew of them. In this case, American argues that the statements in the identical affidavits of the police officers that Haster possessed cocaine gave rise to a similar rebuttable presumption that Phillips knew of it. Although that presumption was rebutted by Phillips' uncontradicted affidavit that she did not know of her guest's possession of cocaine, according to American the presumption and its rebuttal gave rise to a genuine issue of material fact, precluding the entry of summary judgment. See *Tabor & Co. v. Gorenz* (1976), 43 Ill. App. 3d 124, 129, 356 N.E.2d 1150, 1154 (when presumption of receipt of letter properly addressed, stamped, and mailed is rebutted, issue becomes question for trier of fact to resolve).

American argues that the alleged presumption of Phillips' knowledge or permission arises from the Controlled Substance and Can-

nabis Nuisance Act (740 ILCS 40/11 (West 1992)). The Act creates a rebuttable presumption that when a controlled substance is found or used anywhere in an apartment, it was either used or possessed by a lessee or occupant, or the lessee or occupant permitted the premises to be used for that use or possession. American argues that laws and statutes in existence at the time a contract is executed are considered a part of the contract as though they were expressly incorporated therein. (*Polytechnical Consultants v. Lind Plastic Products, Inc.* (1980), 82 Ill. App. 3d 472, 474, 402 N.E.2d 869, 871.) Even though the Controlled Substance and Cannabis Nuisance Act was not mentioned in the complaint, according to American its terms are applicable. The Act, however, is limited to criminal matters and is not applicable in this civil case, which was not brought under it.

American attempts to bolster its argument by relying on cases from Georgia (*Housing Authority of Atlanta v. Davis* (1981), 158 Ga. App. 600, 281 S.E.2d 345) and New York (*Portugues v. Golar* (N.Y. Sup. Ct. 1973), 75 Misc. 2d 893, 349 N.Y.S.2d 254; *Tompkins Square Neighbors, Inc. v. Zaragoza* (1973), 43 A.D.2d 551, 349 N.Y.S.2d 395, *motion dismissed* (1974), 34 N.Y.2d 737, 313 N.E.2d 790). Phillips correctly points out that subsequent cases have ruled differently in both states, and she cites other cases from Georgia (*Henry v. Wild Pines Apartments* (1987), 183 Ga. App. 491, 359 S.E.2d 237), West Virginia (*Moundsville Housing Authority v. Porter* (1988), 179 W. Va. 506, 370 S.E.2d 341), Massachusetts (*Hodess v. Bonefont* (1988), 401 Mass. 693, 519 N.E.2d 258), and New York (*Edwards v. Christian* (1978), 61 A.D.2d 1045, 403 N.Y.S.2d 119) that stand for the proposition that a landlord must demonstrate that a tenant either knew or should have known of the illegal activities of a guest before she may be evicted. American attempts to distinguish these cases. There is, however, sufficient Illinois law on this issue that the citation of authority from other jurisdictions is neither necessary nor helpful.

American cites the Illinois case of *Bel-Clark Building Corp. v. Glauner* (1947), 331 Ill. App. 179, 72 N.E.2d 645 (abstract of opinion), to support its assertion that evidence of knowledge or acquiescence on the tenant's part is not necessary to uphold an eviction. In *Glauner* the lessor filed suit for possession upon 10 days' notice for several violations of the lease, including seven by the tenant's children. The circuit court entered judgment for the landlord and the tenant appealed, urging that the lease violations committed by his children were not chargeable to him unless the evidence revealed that he authorized or ratified them. The appellate court rejected this argument and stated:

"As an abstract proposition, defendant's position is correct, except

that he overlooks the provision of the lease, which states 'that the said lessee and those occupying under said lessee will comply with and conform to all reasonable rules and regulations that the lessor may make for the protection of the building or the general welfare and comfort of the occupants thereof'. His children are included in the provision of 'those occupying under said lessee.' " *Glauner*, slip op. at 2.

In *Glauner*, then, an express provision in the lease defeated the tenant's claim that he was not vicariously liable for the actions of his children. The lease made the tenant liable only for the actions of those occupying under the lease, however; it therefore need not be used as precedent for expanding the coverage of the lease to all acts of guests, regardless of their relationship to the lessee.

Further, *Glauner* dealt with a private, not a federally subsidized, landlord-tenant relationship. The actions of a landlord in a federally subsidized relationship, such as here, must conform to constitutional requirements. (See *American Property Management Co. v. Green-Talaefard* (1990), 195 Ill. App. 3d 171, 552 N.E.2d 14.) Phillips strongly argues the constitutional issues of substantive due process and equal protection, citing *Tyson v. New York City Housing Authority* (1974), 369 F. Supp. 513, 518-19, which seems to require a finding of "personal guilt" to satisfy due process. American properly points out, however, that in order to establish a denial of substantive due process an evicted tenant must demonstrate that the landlord's actions deprived her of her property for an irrational or invidious purpose. (*Long Grove Country Club Estates, Inc. v. Long Grove* (N.D. Ill. 1988), 693 F. Supp. 640, 657.) Alternatively, borrowing freely from Justice Rakowski's dissent in *Davis* (257 Ill. App. 3d at 423-24, 628 N.E.2d at 1085-86), American points out that the tenant must claim either a violation of some other substantive constitutional right or that the state law remedies are inadequate. (*Polenz v. Parrott* (7th Cir. 1989), 883 F.2d 551, 558.) American also counters with *Chavez v. Housing Authority* (5th Cir. 1992), 973 F.2d 1245, raised by Justice Rakowski in his *Davis* dissent, which summarily rejects Phillips' argument that she cannot be held vicariously liable for her guest's conduct. The constitutional arguments do not assist Phillips in this case.

■ Phillips asserts that American has waived its arguments on appeal as to paragraph 29 of the lease because it did not allege a violation of paragraph 29 in its notice of termination and its complaint, and because it did not argue, in response to the motion for summary judgment, that Phillips had violated paragraph 29 or that the lease imposed a strict liability standard. Phillips cites *Schneider*

*v. Danielly* (1951), 344 Ill. App. 546, 101 N.E.2d 604 (abstract of opinion), for the proposition that an eviction court may not rest its decision in a forcible entry and detainer action on a ground not referred to in the landlord's notice of termination. She also cites federal regulations governing the Section 8 Rental Assistance Program (24 C.F.R. § 247.6(b)) for the same proposition. She further relies upon counsel's statement in oral argument on the motion for summary judgment that this case is distinguishable from *Davis* because *Davis* involved a vicarious liability standard unlike this case.

When, however, facts to support a theory have been raised in argument and in affidavits or depositions before the court without objection, an appellant can raise that theory on appeal. (*Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 732, 523 N.E.2d 30, 35.) During the hearings on the motion for summary judgment and on the motion for reconsideration, American raised the issue that Phillips violated her lease, which was in evidence before the court, by engaging in material noncompliance, as defined in paragraph 23(b) of the lease. While the notice of termination set forth violations of paragraphs 13(b), 13(c), and 23(b), the lease provisions included criminal activity on the part of the tenant's guest through the definition of such activity in paragraph 29.

Further, American's notice of termination clearly states that Phillips engaged in "material noncompliance" in that the police confiscated crack cocaine from her unit. Such conduct is defined as "material noncompliance" in paragraph 23(b) of the lease because of the further definition of that term in paragraph 29(e). It cannot be said that American has waived its right to rely upon the stated criminal activity for termination.

■ Finally, the circuit court considered American's arguments that Phillips was vicariously liable for the criminal acts of her guest and rejected them. Although a party is prohibited from raising on appeal an issue it never advanced in the circuit court (see, *e.g., Leone v. City of Chicago* (1993), 156 Ill. 2d 33, 38, 619 N.E.2d 119, 121-22), this issue was considered by the circuit court and it cannot be said that it is waived in this case.

Summary judgment may be granted if, after a consideration of the pleadings, affidavits, and other proper materials, no genuine issue of material fact remains to be determined. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) A genuine factual issue exists if there is a dispute as to the material facts or, where there is no such dispute, where reasonable persons might draw different inferences from the facts. (*Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 596, 491 N.E.2d 803, 811.) There is no such genuine is-

sue of material fact in this case, which turns on the interpretation of the language of the lease.

■ We find that the language of paragraph 29(a) of the lease, that "a guest or other person under the Tenant's control shall not engage in or facilitate criminal activity, including, but not limited to, violent criminal activity or drug-related criminal activity," is ambiguous. It could be construed to mean that the guest must be under the tenant's control and that, therefore, the tenant must have knowledge of a guest's drug-related criminal activity before the tenant can be subject to the termination of tenancy and eviction. Because ambiguous lease terms must be construed against the drafter of the lease, we construe this language against American and in favor of Phillips. The circuit court therefore properly entered summary judgment for Phillips.

Had the lease specified unambiguously that a tenant is vicariously liable for the drug-related criminal activity of her guest, whether or not she had knowledge of the activity or whether or not the guest was under her control, we would have been faced with another issue. We need not decide that issue in this case, however.

For the above reasons, we affirm the judgment of the circuit court.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.