## Allegheny County Housing Authority
## v. Arminthia S.

*John T. McVay,* for plaintiff.
*Kimberly Motley-Phillips,* for defendant.

WETTICK, *J.,* June 24, 1993—In the case at LT92-300, the Allegheny County Housing Authority seeks to evict a tenant for the illegal drug-related activity of her minor child. In the case at LT92-101, this Housing Authority seeks to evict a tenant for the illegal drug-related activity of a frequent visitor.

I.

Arminthia S. is a tenant in a public housing apartment at the McKees Rocks Terrace public housing complex. Ms. S.'s lease permits the Housing Authority to terminate the lease for the conviction of any family member of a crime related to illegal drug activity.

On September 26, 1991, plaintiff's son, a minor, sold crack cocaine to an undercover police officer. The sale occurred at the McKees Rocks public housing complex. However, it did not occur at or in the immediate vicinity of Ms. S's apartment.

Ms. S.'s son was arrested on October 15, 1991. Subsequently, he was found guilty of possession with intent to deliver in a delinquency proceeding in the Juvenile Court.

The evidence establishes that Ms. S.'s son was residing with his mother at the time of the sale. The evidence further establishes that this child had been involved with the juvenile justice system since age 13 and had been placed outside the home on several occasions. Ms. S. testified that her son was beyond her control. However, it is not clear that she sought to exercise control, since the testimony further established that Ms. S. had not cooperated with the local police and the Juvenile Court probation staff on matters involving her son's behavior. Consequently, this is not a case in which criminal activity of a child occurred despite significant efforts on the part of a parent to supervise the child.

The Housing Authority bases its claim for possession on subparagraph XIV(A)(9) of the lease between the Housing Authority and Ms. S. which allows the Housing Authority to terminate the lease for the conviction of any family member of a crime related to illegal drug

activity. The Housing Authority contends that it was authorized to evict Ms. S. under this subparagraph because the 1990 Cranston-Gonzalez Amendments to the United States Housing Act of 1937 provide that: "any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or near such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy." 42 U.S.C. §1437d(1)(5).

The Housing Authority also relies on HUD Regulation 24 C.F.R. §966.4(1) which requires each lease entered into between a housing authority and a tenant to include the following provision:

"(1)   *Termination of tenancy and eviction — (1) Procedures.*   The lease shall set forth the procedures to be followed by the PHA and by the tenant in terminating the lease.

"(2)   *Grounds for termination.*   (i) The PHA shall not terminate or refuse to renew the lease other than for serious or repeated violation of material terms of the lease such as failure to make payments due under the lease or to fulfill the tenant obligations set forth in section 966.4(f) or for other good cause.

"(ii) Either of the following types of criminal activity by the tenant, any member of the household, a guest, or another person under the tenant's control, shall be cause for termination of tenancy:

"(A)   Any criminal activity that threatens the health, safety or right to peaceful enjoyment of the PHA's public housing premises by other residents.

"(B)   Any drug-related criminal activity on or near such premises."

The tenant first argues that the lease provision and the Cranston-Gonzalez Amendments cover only drug-related criminal activity occurring in or next to the rental unit and do not provide for evictions based on activity conducted elsewhere on the property of the public housing complex. I reject this argument.

Subparagaraph XIV(A)(9) of the lease provides that the Authority may terminate the lease upon a conviction of any family member of a crime related to illegal drug-related activity—there is no requirement that this drug activity be conducted on or in the vicinity of the Housing Authority property. While this provision is overly broad, other provisions within the lease show that the lease intends to reach activity occurring on or in the vicinity of the Housing Authority's housing complex. Subsection XIV(A)(4) allows an eviction for serious or repeated interference of the rights of other tenants, subsection XIV(A)(7) for creation of physical hazards in the unit, common areas, grounds, and parking areas of the project site, and subsection XIV(A)(8) for the conviction of the head of a household or other family member of a crime committed on or around the property of the Authority. Also if subparagraph XIV(A)(9) was intended to apply only to activity occurring in the rental unit, the lease would have used the same language as is contained in subparagraph XIV(A)(10) which allows termination for "illegal weapons or drugs seized in a PHA unit by a law enforcement officer."

The 1990 Cranston-Gonzalez Anmendments that I previously quoted refer to any drug-related activity "on or near such premises." In addition, this amendment refers to any criminal activity that "threatens the health, safety or right to peaceful enjoyment of the premises by any other tenants."

As I will discuss later, the sole reason that federal law permits an eviction for drug-related criminal activity is to protect other tenants' rights to live in a safe and peaceful environment. Drug-related activity occurring in the common areas and on the grounds of the apartment complex threatens this right of the other tenants to at least the same extent as drug-related activity occurring in the rental unit. For this reason and because the federal law provides for termination of a lease for any criminal activity "that threatens the health, safety or right to peaceful enjoyment of the premises by other tenants," it is clear that the location of the criminal activity that serves as a basis for an eviction is defined by the right of the other tenants to live in a safe and peaceful environment. See generally, *Turner v. Chicago Housing Authority*, 760 F. Supp. 1299 (ND. Ill. 1991), *vacated as moot*, 969 F.2d 461 (7th Cir. 1992).

The tenant's remaining arguments challenge the constitutionality of her eviction from public housing based on activities of a minor child which did not occur in the tenant's presence where there is no evidence to support a finding that the tenant encouraged or even knew of these activities. I agree with the tenant that I may not make a finding that the tenant knew of her son's drug-related criminal activities simply because her son lived with her. I also agree that federal law may not create a presumption that every tenant has knowledge of any drug-related criminal activities of each member of the tenant's household conducted on the property of the housing complex. See *United States Department of Agriculture v. Murry*, 413 U.S. 508, 93 S.Ct. 2832 (1973) (irrebuttable presumption of lack of need for food stamps

based on income of household in which applicant previously resided); *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230 (1973) (irrebuttable presumption of non-residence based on out-of-state address); and *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586 (1971) (presumption of negligence based on involvement in a traffic accident). Consequently, the issue in this case is whether the Constitution bars a public housing agency from terminating this lease of a tenant for criminal drug-related activity of a minor child where there is no evidence that the tenant knew of the activity.

In a private landlord and tenant relationship, landlord-tenant law allows a landlord to terminate a lease whenever the tenant or any member of the household engages in conduct which violates the terms of the lease and to elect not to renew the lease for any reason. Until the 1960's, the landlord-tenant law governing a private landlord and tenant relationship also governed a lease between a public housing authority and a tenant. Ordinarily, public housing leases were for a term of one month and were automatically renewable for another month unless terminated by either party. Consequently, the managers of housing authorities had unfettered discretion to remove a public housing tenant simply by electing not to renew the lease. It was common for the managers of housing authorities to view themselves as providing housing to "worthy" tenants. Consequently, leases would not be renewed if the housing authority management disapproved of a tenant's morals, work habits, etc. Also, the leases of "ungrateful" tenants who complained about housing conditions would not be renewed.

In a series of cases decided in the early 1970's the United States Supreme Court held that government

benefits are property interests protected from arbitrary termination by the Fourteenth Amendment. See *e.g., Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011 (1970) (public assistance benefits); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893 (1976) (social security disability benefits). This case law bars a housing authority from either terminating or refusing to renew a lease for an additional term without a reasonable justification. *Joy v. Daniels,* 479 F.2d 1236 (4th Cir. 1973). This case law serves as the basis for various HUD regulations, including 24 C.F.R. §966.4(1) set forth at page 235 of this opinion, which prohibit a housing authority from terminating or refusing to renew a lease without good cause. The tenant's remaining arguments are based on the case law holding that a tenant has a protectable property interest in continued tenancy in public housing.

The tenant argues that a strict liability standard that deprives the tenant of her property without a showing that she had any responsibility for the drug-related activity violates a fundamental constitutional principle that government may not punish one person for the acts committed by another. *United States v. One Tintoretto Painting,* 691 F.2d 609 (2d Cir. 1982). This standard, according to the tenant, also interferes with the tenant's right to associate with other persons by punishing a tenant solely for his or her associations with third persons. *Wilson v. Taylor,* 733 F.2d 1539 (11th Cir. 1984). The weakness of this argument is that there is no basis for me to find that the Housing Authority is terminating the lease for the purpose of punishing either the tenant or the tenant's children. The only apparent purpose for the eviction is to protect the rights of the other tenants to live in a safe and peaceful environment.

The purpose of the federal public housing program is to provide subsidized housing to low-income persons.

Under the Equal Protection Clause of the Fourteenth Amendment, any eligibility standards which are not income-related must promote a substantial governmental interest. Thus, the controlling issue is whether the congressional policy to evict tenants whose minor children engage in criminal drug-related activity furthers a legitimate state objective.

The tenant does not disagree with the Housing Authority's position that the Housing Authority has an obligation to provide a safe and peaceful environment for all of the tenants who reside in a public housing complex. I find that there is a substantial connection between the policy of evicting the entire household for the sale of crack cocaine on the premises by any member of the tenant's immediate family who lives in the household and the Housing Authority's goal of providing a safe and peaceful 'environment for the other tenants. This policy, if publicized, creates an incentive for each member of the household to refrain from selling drugs on the grounds of the public housing complex because this activity will jeopardize the housing of the participant and every other member of the family. This provision creates an incentive on the part of the other members of the family to attempt to control each member of the household. Also, it is unrealistic to assume that a mother will exclude a minor child who engaged in drug-related activity from the housing unit or that the management of the Housing Authority will aggressively seek to keep a minor child out of his or her mother's residence.

The tenant argues that the policy is overly broad—in many instances the Housing Authority may protect other tenants by means other than evicting the tenant, particularly if the child has another place where he or she may live. Under federal law, a housing authority

is not required to evict a tenant in every instance in which a household member engages in drug-related criminal activity. HUD Regulation 24 C.F.R. §966.4(1)(5) provides that:

"(5) *Eviction for criminal activity —(i) PHA discretion to consider circumstances.* In deciding to evict for criminal activity, the PHA shall have discretion to consider all of the circumstances of the case, including the seriousness of the offense, the extent of participation by family members, and the effects that the eviction would have on family members not involved in the proscribed activity. In appropriate cases, the PHA may permit continued occupancy by remaining family members and may impose a condition that family members who engaged in the proscribed activity will not reside in the unit. A PHA may require a family member who has engaged in the illegal use of drugs to present evidence of successful completion of a treatment program as a condition to being allowed to reside in the unit."

There is no evidence to support a finding of an abuse of discretion in this case.

The tenant cites the case law holding that the right to raise one's children is a basic civil right—that freedom of choice in matters of family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment. *Cleveland Board of Education v. LaFleur,* 414 U.S. 632 (1974); *Stanley v. Illinois,* 405 U.S. 645 (1972); *Skinner v. Oklahoma,* 316 U.S. 535 (1942); and *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923). She argues that a policy of evicting a parent for the conduct of her children living within her household punishes a parent for serving as a custodial parent in violation of the Fourteenth Amendment's prohibitions against state interference in matters of family life. The

weakness of this argument is that the Housing Authority's motive for the eviction is not to interfere with any matters of family life, and the impact of the Housing Authority's policy on choices that parents will make in matters of family life is minimal. Compare, *e.g., Wilson v. Taylor, supra,* in which a police officer was fired for dating the daughter of a convicted felon reputed to be a key figure in organized crime.

The tenant cites a series of cases which held that a tenant may not be evicted for criminal activity of a third person of which the tenant apparently had no knowledge. Most of the cases are easily distinguished. Several of these cases were decided in the tenant's favor because lease provisions required some knowledge of the activity on the tenant's part. See *Chicago Housing Authority v. Rose,* 203 Ill. App. 3d 208, 560 N.E.2d 1131 (1990); *Housing Opportunities Commission of Montgomery County v. Lacey,* 585 A.2d 291 (Md. 1991), and *Hodess v. Bonefont,* 519 N.E.2d 258 (Mass. 1988). In another case that tenant prevailed because the termination provision of the lease covered only criminal activity that occurred within the rental unit. *Turner v. Chicago Housing Authority, supra.* In other cases, the courts ruled in the tenant's favor because the housing authority sought to evict the tenant for the activities of an adult child who was not a member of the household. *Tyson v. New York City Housing Authority,* 369 F. Supp. 513 (S.D.N.Y. 1974); *Corchado v. Popolizio,* 567 N.Y.S.2d 460 (N.Y. App. Div. 1991); and *Edwards v. Christian,* 403 N.Y.S.2d 119 (N.Y. App. Div. 1978). The final case *Dickerson v. Popolizio,* 562 N.Y.S.2d 658 (N.Y. App. Div. 1990), is very fact specific—the parents could not be evicted

for the criminal activity of their adult mentally and physically handicapped son who resided with them.

## II.

Valerie Lauw has been a tenant in the Housing Authority's public housing complex known as the Morgan Housing Project for several years. She is presently a month-to-month tenant under a February 23, 1989 lease agreement.

For a two-to-three year period prior to November 9, 1991, Carlos Ford stayed with Ms. Lauw in her apartment on an on-and-off basis. The amount of time that he spent at Ms. Lauw's apartment depended on his relationship with Ms. Lauw at that time and his other activities and interests. Ms. Lauw testified that Mr. Ford would stay with her and that he would also stay at other places and with other people. Mr. Ford apparently had no single residence where he lived on a regular basis. Throughout this period, he was more than an occasional overnight visitor at Ms. Lauw's apartment but he apparently did not spend most nights at this apartment for a substantial uninterrupted period of time.

On November 7, 1991, Mr. Ford sold crack cocaine to an undercover narcotics agent on the property of the Morgan Housing Project. The sale did not occur at or in the immediate vicinity of Ms. Lauw's unit. There is no evidence that Ms. Lauw encouraged or even knew that Mr. Ford was selling crack cocaine.

On November 9, 1991, Mr. Ford was arrested at Ms. Lauw's apartment for the crack cocaine sale. At the time of the arrest, he was present as an overnight guest of Ms. Lauw and had a small amount of marijuana

in his possession. There is no evidence that Ms. Lauw knew that Mr. Ford had marijuana in his possession.

Carlos Ford pled guilty under The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, as amended, to three counts of possession of controlled substances (35 P.S. §780-113(a)(16)), three counts of possession with intent to deliver and three counts of delivery (35 P.S. §780-113(a)(3)), and possession of drug paraphernalia (35 P.S. §780-113(a)(32)). He also pled guilty to one count of possession of a small amount of marijuana (35 P.S. §780-113(a)(31)). On the same date, he was placed on probation for two years.

The Housing Authority has instituted proceedings to evict Ms. Lauw because of Mr. Ford's sale of crack cocaine on the grounds of the Housing Authority complex and his possession of marijuana at defendant's apartment. The grounds for the eviction are the forfeiture of the lease by reason of Mr. Ford's conduct and the end of the lease term.

I initially consider the Housing Authority's claim based on Mr. Ford's possessing a small amount of marijuana. A 1990 amendment to the Pennsylvania Landlord and Tenant Act provides that the following act shall be a breach of a condition of any lease and grounds for the removal of a tenant from a multiple dwelling premises:

"(a)(3) The seizure by law enforcement officials of any illegal drugs on the leased premises in the single-family dwelling or multiple dwelling premises or tenement." 68 P.S. §250.555.

As I discussed in Part I of this opinion, the interest of an individual in the continued right to occupy subsidized housing is a property interest protected by the Fourteenth Amendment of the United States Consti-

tution. Consequently, a tenant may not be deprived of this property interest without good cause. The case law which I cited establishes that the Constitution prohibits the Housing Authority from forfeiting this interest for the purpose of punishing a tenant because of a tenant's lifestyle or criminal activity. The Housing Authority is permitted to use anti-social or criminal behavior as a basis for terminating a lease only if this behavior threatens the interests of other tenants.

There is no connection between Mr. Ford's possession of a small amount of marijuana and the interests of other tenants in having a safe and peaceful living environment.[*] Consequently, the Housing Authority may not either terminate or refuse to renew the lease because of Mr. Ford's possession of a small amount of marijuana.

I next consider the Housing Authority's claim that it is entitled to terminate the tenant's lease because Mr. Ford sold crack cocaine on the premises of the public housing complex.

The tenant is correct that none of the provisions within the February 1, 1989 lease allow the Housing Authority to terminate the lease for conduct of third parties which the tenant did not condone. However, the Housing Authority contends that the lease includes the 1990 amendments to the Pennsylvania Landlord and Tenant Act which provide that the seizure of illegal drugs on the "leased premises" shall serve as a basis for evicting a tenant. In addition, the Housing Authority contends that each lease implicitly contains the provisions of the Cranston-Gonzalez Amendments which allow a housing authority to terminate a lease for criminal drug-

---

[*] Possession of a small amount of marijuana is a misdemeanor for which the maximum punishment is imprisonment not to exceed 30 days and a fine not to exceed $500. 35 P.S. §780-113(g).

related activity "on or near such premises, engaged in by a public housing tenant, any member of the tenant's household or any guest or other person under the tenant's control." In support of this position, the Housing Authority also cites HUD Regulation 24 C.F.R. §966.4 (1) which provides that leases between a housing authority and a tenant shall contain a provision which states that the drug-related criminal activity "by the tenant, any member of the household, a guest, or other person under the tenant's control" shall be cause for terminating the tenancy.

As I discussed previously, there are two methods for removing a tenant—the Housing Authority may establish a forfeiture of the lease by reason of a material breach of the conditions of the lease or the Housing Authority may refuse to renew a month-to-month lease for good cause. In this case, the Housing Authority did not renew the lease. Under the Constitution and HUD Regulation §966.4(1) (set forth at page 235 of this opinion), the Housing Authority may refuse to renew a lease for good cause. If Mr. Ford's conduct is covered by the Cranston-Gonzalez Amendments, §966.4(1) of the HUD Regulations provides that the Authority had good cause for refusing to renew the lease and, therefore, is entitled to possession based on its decision not to renew the lease. Consequently, it is necessary to consider the Housing Authority's claim that under the Cranston-Gonzalez Amendments and the accompanying HUD Regulation §966.4(1), it is authorized to evict the tenant.

Mr. Ford engaged in drug-related criminal activity as defined in the Cranston-Gonzalez Amendments. The activity was "on or near" the premises. See pages 236-237 of this opinion.

The only remaining question is whether this was drug-related criminal activity "engaged in by a public housing tenant, any member of the tenant's household, or *any guest or other person under the tenant's control*" (emphasis added) within the meaning of the Cranston-Gonzalez Amendments.

I have found that Mr. Ford was not a member of the tenant's household. I have also found that while he was on the premises as a guest of the tenant, the sale did not occur in the immediate vicinity of the tenant's apartment and that she did not encourage or even know that Mr. Ford was selling crack. Consequently, Mr. Ford was not under the tenant's control at the time of the incident. The Housing Authority argues that the Cranston-Gonzalez Amendments reach "any guest." The tenant, on the other hand, contends that it reaches only a guest "under the tenant's control."

I agree with the tenant's interpretation. "Other person" is simply an expansion of the term "guest" to encompass all persons under the tenant's control to avoid the strained argument that the person was not a "guest" but rather a friend of a guest, an employee, etc. If "under the tenant's control" was intended to apply only to persons other than guests who engaged in drug-related criminal activity, the Cranston-Gonzalez Amendments would not have included an "or" before "any guest" and the clause would have included the term "any" before other persons since this was the format used elsewhere in this clause.

It is reasonable for Congress to include the additional requirement that the guest be under the tenant's control when the illegal drug-related activity occurs because the tenant does not have the same ability to control the behavior of a guest as compared to a family member, and the guest does not have the same incentive to refrain

from engaging in drug-related activity on or near the premises since he or she will not lose his or her housing by engaging in such activity. Under the Housing Authority's reading of the Cranston-Gonzales Amendments, there is no requirement that the tenant even know that the person committing the criminal act is on the premises. Furthermore, the amendments, as construed by the Housing Authority, can reach almost any situation: consider, for example, a 15 year old boy who sells drugs on the basketball court of the public housing complex after visiting for an hour with a 14 year old daughter of the tenant or the jitney driver who sells drugs in the parking lot of the public housing complex after dropping off the tenant.

The Housing Authority seeks to distinguish between persons who are frequent visitors and those who are occasional visitors. However, neither the Cranston-Gonzalez Amendments, the HUD Regulations, nor the lease provisions make this distinction.

As the tenant points out, where guests and other persons are involved in drug transactions of which the tenant appears to have no knowledge, the Housing Authority has another solution. If persons who do not reside in the public housing complex engage in drug-related criminal activity that seriously jeopardizes the interests of tenants, the Housing Authority as the owner of the premises is entitled to exclude these persons from its property. Furthermore, since the leases are month-to-month, the Housing Authority may include a provision within a tenant's lease which states that these persons have been excluded from the property and which includes as a ground for terminating the lease the tenant's permitting them to visit the tenant at the leasehold premises.

In response to this proposal, the Housing Authority stated that under the Constitution, it cannot interfere with a tenant's right to associate with other persons. This argument is without merit because the Housing Authority is not punishing the tenant for associating with the person who engaged in these drug-related activities. (In fact, the tenant may associate with this person at any location other than the Housing Authority's property.) The Housing Authority has the right to exclude this person from the property in order to protect its tenants. Furthermore, it has the right to terminate the lease of persons who interfere with the Housing Authority's enforcement of its policies designed to protect the safety and welfare of tenants. The critical issue is whether there is a basis to bar the guest from the premises. A tenant who can establish that there is no basis for doing so will defeat any eviction based on a violation of a provision excluding that person from the tenant's premises. Otherwise, a violation of the lease provision is a valid ground for terminating the lease.

## CONCLUSION

Because of the Housing Authority's obligation to protect the rights of its tenants to live in a safe and peaceful environment, it may include and enforce lease provisions which promote this goal. However, because an eviction from subsidized housing is likely to result in homelessness or living in substandard housing, the right of a low-income person to continue to live in subsidized housing is an important right protected by the constitutional protections afforded property and by various HUD Regulations. Consequently, the Housing Authority may not automatically evict because of a breach of a lease provision included

to protect other tenants. See 24 C.F.R. §911.4(1)(5). Evictions based on lease provisions included to protect the interests of other tenants must be reviewed by the courts to determine the relationship between the eviction and protection of the rights of the other tenants.

I am permitting the eviction in *Allegheny County Housing Authority v. Arminthia S.* because the Housing Authority did not abuse its discretion in deciding to evict the tenant for the drug-related criminal activity of her child under the circumstances of this case. In the case of *Allegheny County Housing Authority v. Valerie Lauw,* I find that an eviction based upon the possession of a small amount of marijuana is not related sufficiently to the goal of protecting the interests of other tenants. I further find that the other drug-related criminal activity which was not conducted within or in the immediate vicinity of Ms. Lauw's rental unit does not serve as a basis for the eviction because the Housing Authority has not established that the guest who engaged in this illegal drug-related activity was under the control of the tenant.

For these reasons, I enter the following verdicts:

## VERDICT

Possession of the rental unit presently occupied by Arminthia S. is awarded to the Allegheny County Housing Authority.

## VERDICT

The Allegheny County Housing Authority's claim for possession of the rental unit occupied by Valerie Lauw is denied.