BERNARD HODESS & others[1] *vs.* EMILY BONEFONT.

Worcester.   October 8, 1987. — February 16, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN & O'CONNOR, JJ.

*Housing. Landlord and Tenant*, Eviction. *Intentional Conduct. Parent and Child*, Liability for acts of child.

In a proceeding by the owners of a multi-unit housing development to evict a
    tenant on the basis of a burglary committed by the tenant's two sons
    who lived with her, the plaintiffs did not sustain their burden, placed
    on them by the relevant language of the lease, of proving not only the
    occurrence of events justifying eviction, but also a substantial failure
    by the tenant to fulfil her lease obligations, where there was no evidence
    warranting a finding that the tenant could reasonably have foreseen and
    prevented her sons' conduct. [694-697]

SUMMARY PROCESS. Writ in the Worcester County Division of the Housing Court Department dated December 3, 1985.

The case was heard by *John C. Martin*, J.

After review by the Appeals Court the Supreme Judicial Court granted leave to obtain further appellate review.

*Roger J. Brunelle* (*Eugene L. Rubin* with him) for the plaintiffs.

*Nancy E. Rae* for the defendant.

*Charles Harak, Ernest Winsor & Richard M. W. Bauer*, for Massachusetts Union of Public Housing Tenants, amicus curiae, submitted a brief.

O'CONNOR, J. This is an action brought in the Housing Court by the owners of Greenhill Towers, a multi-unit residential development in Worcester, to evict the defendant from a unit she occupied with her three children. After a trial, the judge ordered the entry of judgment for the defendant tenant

---

[1] The plaintiffs are partners doing business as Greenhill Associates.

for possession. The plaintiffs appealed to the Appeals Court and that court reversed the judgment. 23 Mass. App. Ct. 577 (1987). We granted the tenant's application for further appellate review, and we now affirm the judgment of the Housing Court.

Greenhill Towers is owned by the plaintiffs and financed by the Massachusetts Housing Finance Agency. The tenancy is subject to a lease. The plaintiff owners argue that §§ G.9.c, F.2, and F.14 of the lease confer on them the right to evict the defendant. Section G.9.c provides as follows: "*Management Agrees*: . . . 9. To terminate Agreement or evict Resident for no other reason than the following: . . . (c) material non-compliance with this Agreement, which term shall include . . . one or more substantial, or repeated, or intentional failures to abide by any obligations under this Agreement." Section F.2 provides that the tenant, who is referred to throughout the lease as "Resident," agrees "[t]o live in a peaceful way respecting the right of other residents to privacy, security, and peaceful enjoyment." The tenant (Resident) agrees in § F.14 "[n]ot to create or allow to be created by Resident, members of Resident's household, relatives, guests, invitees or agents, any unlawful, noisy or otherwise offensive use of the leased premises; not to commit any disturbance of nuisance, private or public; not to obstruct free use or access of common areas."

The judge found that on August 19, 1985, in the daytime while the tenant was at work, the tenant's two sons, who lived with her, broke into another unit in the development and stole a video cassette recorder and other personal property, which was then secreted in the tenant's apartment. In his memorandum of decision, the judge stated that there had been no evidence before him that the tenant's sons had engaged in previous wrongful acts affecting other residents of the development. He concluded that, although the breaking-in incident was "grave," it had to be viewed as an "isolated" incident and "not foreseeable."

We agree with the owners that § G.9.c provides that the owners have the right to evict a tenant for a single substantial failure to abide by the tenant's obligations under the lease. The critical question in this case, therefore, is whether such

a failure has been established. The judge appears to have concluded that the breaking-in incident constituted a substantial noncompliance with the lease, thus triggering the lease provision authorizing eviction, but that, under principles articulated by this court in *Spence* v. *Gormley*, 387 Mass. 258 (1982), the tenant was nevertheless entitled to retain possession of her unit. For reasons we set forth below, we are satisfied that, as a matter of law, the plaintiff owners did not sustain their burden of proving that the defendant failed to fulfil her lease obligations. Therefore, the plaintiffs have not established that the terms of the lease authorized them to evict the tenant. Although our reasoning differs from that of the judge, we conclude that the judge's order of judgment was correct. As a result, we do not reach the further constitutional, statutory, and policy questions possibly suggested by *Spence* v. *Gormley, supra,* and argued extensively by the parties, concerning whether the tenant would be entitled to possession even if, as in *Spence* v. *Gormley,* eviction were authorized by the lease.

In *Spence* v. *Gormley, supra,* the leases identified two relevant permissible grounds for terminating the tenancies involved in that case, neither of which referred expressly to the tenant. Each lease provided: "This lease may be terminated by the [BHA] . . . for no reason other than . . . 2. Reasonable likelihood of serious repeated interference with the rights of other tenants. . . . 5. Creation or maintenance of a serious threat to the health or safety of other tenants. . . ." *Id.* at 261-262. Clearly, the firebombings and assault against a BHA employee involved in the *Spence* v. *Gormley* case were "within the scope of conduct for which eviction [was] authorized." *Id.* at 262. We recognized that the "more important question [was] whether the termination provisions cover[ed] conduct by household members other than the named tenant who [had] signed the lease," and we concluded that they did. We stated that "[t]he language of the termination provisions speaks only of the facts that justify eviction — a threat to health and safety or a likelihood of interference with rights. This wording suggests that if these problems arise from the tenancy, eviction is warranted, whether the wrongdoer is the tenant or a member

of her household. Moreover, an interpretation of the lease to cover the conduct of all household members is consistent with the manifest purpose of the termination provisions, to promote safety and order in the housing projects." *Id.*

Because the language of the termination provisions in *Spence* v. *Gormley* spoke only to the facts, that is, the conduct, justifying eviction, without any identification of the person or persons whose conduct was contemplated, we resorted to the apparent purpose of the provisions to aid us in determining whether the conduct referred to was limited to the tenant's conduct or included conduct of household members. Such resort is inappropriate in this case, however, because the language of the termination provision here does not speak only to the conduct justifying eviction, as in *Spence* v. *Gormley*, but it also speaks to the person whose conduct is referred to. The instant lease, in relevant part, authorizes eviction only in the event of material noncompliance with the lease including a substantial failure "to abide by any obligations" thereunder. Only the owners and the tenant, signatories to the lease, undertook obligations under the lease. Household members, other than the tenant, have no such obligations.

The owners' notice of eviction and their argument on appeal point only to §§ F.2 and F.14 as the source of obligations claimed to have been violated by the tenant. But, there is no evidence warranting a finding that the tenant failed to fulfil her obligations under those sections. Her agreement in § F.2 to live in a peaceful way, respecting the rights of other tenants, cannot fairly be construed as a promise that every member of her household will live peacefully and in a manner consistent with the rights of other tenants. At most, it may be arguable that the tenant agrees that she will not permit household members to engage in nonpeaceful conduct, violative of other tenants' rights, to the extent that she can reasonably foresee and prevent such conduct. There is no evidence that the defendant reasonably could have foreseen and prevented her sons' conduct. Furthermore, the tenant's agreement in § F.14 "[n]ot to . . . allow to be created by Resident, members of Resident's household, relatives, guests, invitees or agents, any unlawful,

noisy or otherwise offensive use of the leased premises," requires, at the very least, some acquiescence by the tenant in her sons' conduct. Even if the sons' storage of the stolen articles in the tenant's premises be considered an unlawful or offensive use of the premises, in the circumstances the tenant did not "allow" that use without knowing about it or at least foreseeing and being able to prevent it.

The owners receive no support from our statement in *Spence v. Gormley, supra* at 265, that, "[w]hen the wrongdoer is a household member, a fair inference exists that the tenant is aware of potential problems, and able to exercise some influence or otherwise prevent violent and destructive conduct on the premises." We made that statement in the context of a discussion about who should have the burden of proof on the issue of "cause" under G. L. c. 121B, § 32 (1986 ed.). We did not suggest that, as an evidentiary matter, mere evidence of a tenant-household member relationship is enough to warrant a finding that the tenant could reasonably have foreseen and prevented a break-in and theft by a household member. The plaintiffs' burden in this case required proof of that fact, and the judge would not have been warranted in finding that the burden was sustained. The plaintiffs have not established their right to evict the defendant.

*Judgment of the Housing*
*Court affirmed.*