MID-NORTHERN MANAGEMENT, INC., Plaintiff-Appellee, v. LEZLEY HEINZEROTH, Defendant-Appellant.

Second District   No. 2—91—1338

Opinion filed September 4, 1992.

Kerry R. O'Brien, Catherine Ritts, and Bernard Shapiro, all of Prairie State Legal Services, Inc., of Rockford, for appellant.

Marc C. Gravino and Stephen E. Balogh, both of Williams & McCarthy, P.C., of Rockford, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Lezley Heinzeroth, appeals the judgment of the circuit court in favor of plaintiff, Mid-Northern Management, Inc., on its forcible entry and detainer complaint. The court held that plaintiff is entitled to possession of the subject apartment due to defendant's material noncompliance with the lease. On appeal, defendant contends that her conduct did not constitute a material breach. We reverse.

Defendant and her seven-year-old son, Rorey, are tenants of plaintiff's Wildberry Village apartment complex, occupying apartment 303 at 5717 Forest Hills Road. The unit is a section 8, federally subsidized rental unit.

The lease between the parties provided, in relevant part:

"The Tenant shall use the premises only as a private dwelling for himself/herself and the individuals listed on the Certification and Recertification of Tenant Eligibility. The Tenant agrees to permit other individuals to reside in the unit only after obtaining the prior written approval of the Owner.

* * *

The Tenant agrees *** not to make or permit noises or acts that will disturb the rights or comfort of neighbors. The Tenant agrees to keep the volume of any radio, phonograph, television or musical instrument at a level which will not disturb the neighbors."

On June 19, 1991, defendant received a notice to terminate tenancy which alleged a number of violations of the above provisions. Specifically, the notice to terminate alleged the following conduct:

"June 7, 1991: Rorey Heinzeroth was observed squirting water through the patio screen hole of the apartment at 5717 Forest Hills Road, Apt. 203, Rockford, Illinois.

June 8, 1991: Lezley Heinzeroth was playing the TV loudly, and ignored a request by her neighbor, Sue Owens, to turn it down.

June 9, 1991: Lezley Heinzeroth was observed standing on her deck repeatedly hollering for her son.

June 9, 1991: Loud noises were heard coming from the apartment at 5717 Forest Hills Road, Apt. 303, Rockford, Illinois.

June 10, 1991: Lezley Heinzeroth was observed standing on her deck repeatedly yelling for her son.

June 10, 1991: Loud noises were heard coming from the apartment at 5717 Forest Hills Road, Apt. 303.

June 12, 1991: Lezley Heinzeroth's son, Rorey, was shouting at Earl Peterson, the night manager.

June 12, 1991: Rorey Heinzeroth was observed urinating in the hall at 5719 Forest Hills Road, Rockford, Illinois.

June 13, 1991: Rorey Heinzeroth was observed repeatedly jumping from the second story at 5719 Forest Hills Road.

June 7-13, 1991: A woman who apparently goes by the name of 'Mary' has been observed living with Lezley Heinzeroth."

Plaintiff filed a complaint in forcible entry and detainer based on the allegations contained in the notice to terminate. Before trial, the parties stipulated that defendant had received proper notice to quit and that plaintiff would not elicit testimony beyond the allegations of that notice. The parties also stipulated that the unit was a section 8 rental unit which was governed by the regulations set forth at 24 C.F.R. §880.607 (1992).

At trial, Sue Owens testified that she lives in the apartment directly below defendant. She testified that between June 7 and June 19 she observed Mary Dietrich "apparently residing" in defendant's apartment. She observed Dietrich bringing shopping bags and clothes on hangers into the building where defendant resides. She observed her in the company of both defendant and Rorey. She also met Dietrich in the laundry room one day. Dietrich told Owens she was going to get "her" laundry.

Owens also testified that during this same time period she heard loud noises emanating from defendant's apartment. She stated there was loud talking, as well as "party noise" and "T.V. noise."

Owens described several specific incidents involving defendant or her son. On June 7, Rorey squirted Owens' daughter with a water pistol through the screen door of Owens' apartment as Owens and her daughter were preparing to attend Owens' son's graduation. The soaking caused rust stains on the daughter's dress.

She described another incident in which she could hear defendant's television in her apartment and her daughter asked defendant to turn it down.

On June 9, Owens was awakened by loud noises from the bedroom upstairs. She heard a man talking in a loud and profane manner.

On June 10, she heard a loud party upstairs which continued until approximately 4 a.m.

Owens further stated that virtually every day defendant would stand on her porch and call for Rorey. Owens described it as "loud, obnoxious bellering [sic] from daylight 'til dark." She stated that this had been going on for about a year and a half, although the court sustained defendant's objection to this testimony.

Lisa Tallent testified that she is a resident of Wildberry Village. On June 12 she observed Rorey urinating down the stairs of her building.

Victoria Cal is the resident manager of Wildberry Village. On June 13 she saw Rorey and several other children jumping from the balcony of Lisa Tallent's second-floor apartment onto a mattress on the ground.

Earl Peterson stated that he is the evening security manager at the complex. On June 12 he saw Rorey using a skateboard ramp. He had previously told Rorey that he was not to build ramps for skateboarding. Peterson confiscated the ramp and put it in his truck. Rorey then began screaming at Peterson.

Peterson also witnessed the incident with the mattress. He warned the boys to stop, then went into the building. When he returned, they were still jumping onto the mattress. Peterson then summoned Cal.

Defendant testified that she did recall the evening when Owens complained about the television. She and Rorey were watching a scary movie on television. Owens' daughter asked her to turn the volume down and she did so. The complex management never complained to her about the volume of her television. She did not have a party at her apartment on June 9 or 10. No one ever complained to her about a loud party. She admitted that she called for her son from the balcony "two or three times a day." No one ever complained to her about this. She never saw her son urinate in the hallway. No one ever complained to her about this or sent her a bill for damage.

Defendant stated that Cal did tell her about Rorey jumping onto the mattress. She punished her son with grounding and corporal punishment.

According to defendant, Mary Dietrich is a friend of hers, but does not live with her. She visits defendant two to three times a week. She lives at 5380 Steward Road. She does not receive mail at defendant's address. She did stay at defendant's apartment for one weekend, watching Rorey while defendant was out of town at a funeral.

Dietrich also testified that she has never lived with defendant. She visits her often, helping her to do laundry and buy groceries, since defendant cannot drive. She does not do her own laundry at the complex. She spent a weekend watching Rorey while defendant went to a funeral. She also stayed overnight on other occasions.

Following closing arguments, the court took the matter under advisement. The court issued its ruling on October 2. The court found that defendant had committed repeated minor violations of the lease and that plaintiff was entitled to possession. However, the court stayed its order for 30 days and scheduled a status hearing "just to see how we are doing." The court stated that, if defendant was able to remedy the complained-of conduct, it would vacate the order of possession.

During the interim period, plaintiff filed a "Notice of Continuing Lease Violations," asserting that defendant had continued the pattern of conduct described in the original action. In response, defendant filed a "Motion for Entry of Order," contending that the notice of continuing violations did not comport with the statutory notice requirements under applicable Federal regulations. On November 12 the court lifted the stay. The record on appeal does not contain a transcript of the proceedings on November 12. Defendant filed a notice of appeal on November 20, 1991.

Plaintiff initially contends that this court lacks jurisdiction to entertain defendant's appeal. Plaintiff contends that the October 2 order was a final order and that, since defendant's notice of appeal was not filed within 30 days thereafter, it is untimely, citing *Knox v. Keene Corp.* (1991), 210 Ill. App. 3d 141.

Defendant responds that the October 2 order was not final and appealable and that she filed her notice of appeal within 30 days of the November 12 order.

■ We find that we have jurisdiction of this appeal. The October 2 order was clearly not final and appealable. The order provides only that plaintiff is entitled to possession. It does not state a date on which such possession is to begin. Moreover, the writ of restitution normally provided for in a forcible entry and detainer action was not issued on October 2. Rather, a separate order entered November 12 provided that the writ would issue on November 20.

In *Wheeler Tractor & Equipment Co. v. Myers* (1976), 39 Ill. App. 3d 735, the court stayed the order of possession pending defendant's payment of arrearages. The order did not state that the writ of restitution would automatically issue at the end of the period of the stay. The order determined only that defendants were in arrears, but, until

the end of the stay, the issue of who was entitled to possession was not finally determined. (*Wheeler*, 39 Ill. App. 3d at 738.) Similarly, in the instant case, the court found that defendant was in violation of the terms of her lease. However, the ultimate issue of who is entitled to possession was not to be determined until after the upcoming status date.

Moreover, the court during its oral ruling on October 2 clearly stated that a written order was to be prepared and entered. Such an order was not entered until November 12. If at the time of announcing final judgment the judge requires the submission of a written judgment order to be signed by him the judgment becomes final only when the signed judgment is filed. (134 Ill. 2d R. 272; *In re Marriage of Vucic* (1991), 216 Ill. App. 3d 692, 699.) In the instant case, no final judgment was possible until the written order was entered on November 12.

*Knox* (210 Ill. App. 3d 141), on which plaintiff relies, is factually distinguishable. In that case, the court dismissed plaintiffs' complaint with prejudice on April 12. The court, however, set a "status date" for April 27. On May 2, the court issued an order stating that all orders and rulings were final as of that date. Plaintiffs filed their notice of appeal May 30, 28 days after the May 2 order, but 48 days after the April 12 order. This court determined that it lacked jurisdiction to review the dismissal. The April 12 order finally determined the rights of the parties and was thus final and appealable. The court's attempt to retain jurisdiction could not change the nature of the April 12 order. In the instant case, the October 2 order did not finally determine the rights of the parties and was thus not final and appealable. The November 12 order finally terminated the controversy, and defendant's notice of appeal filed eight days later was timely.

Proceeding to the merits of the controversy, defendant contends that the court erred in determining that she substantially breached her lease. She contends that the acts alleged amount to, at most, a series of isolated minor violations of the lease. Moreover, the court focused primarily on the conduct of her son. She contends that none of her son's acts took place in her presence and, under these circumstances, she cannot be held accountable for her son's conduct. Furthermore, all of these acts occurred within a short period of time, and, prior to receiving the notice of termination, she had no notice that the conduct was disturbing to her neighbors.

■ Initially, the parties agree that, since the apartment at issue is a federally rent-subsidized unit, eviction procedures are governed by applicable Federal regulations found at 24 C.F.R. §880.607 (1992).

Under the applicable regulations, a tenant can be evicted only for "material noncompliance" with the lease. Material noncompliance is defined as one or more substantial lease violations or repeated minor violations which disrupt the livability of the building, adversely affect the health or safety of any person or the right of any tenant to the quiet enjoyment of the leased premises, interfere with the management of the building or have an adverse financial impact on the building. 24 C.F.R. §880.607(b)(3) (1992).

In this case, plaintiff concedes that it did not prove any major violations of the lease. Plaintiff maintains, however, that it established a pattern of minor violations which disrupted the livability of the building and interfered with other tenants' right of quiet enjoyment of the buildings.

The only matter to be resolved in a forcible entry and detainer action is the right to possession. (*S & D Service, Inc. v. 915-925 W. Schubert Condominium Association* (1985), 132 Ill. App. 3d 1019, 1023.) Such a determination frequently, as here, requires construction of the lease. In general, the lease should be construed most strongly against the lessor and in favor of the lessee. (*Chicago Housing Authority v. Rose* (1990), 203 Ill. App. 3d 208, 216; *O'Fallon Development Co. v. Reinbold* (1966), 69 Ill. App. 2d 169, 177-78.) Forfeitures of leasehold interests are not favored. *Plasti-Drum Corp. v. Ferrell* (1979), 70 Ill. App. 3d 441.

In the instant case, the lease provides that the tenant agrees "not to make or permit noises or acts that will disturb the rights or comfort of neighbors." Pursuant to Federal regulations, only a material violation of this, or any other, lease provision could result in eviction. Moreover, there must be some evidence that the tenant was aware of or acquiesced in the alleged violation. *Rose*, 203 Ill. App. 3d at 216; see also *Hodess v. Bonefont* (1988), 401 Mass. 693, 696, 519 N.E.2d 258, 260.

Defendant points out that in making its ruling, the trial court relied primarily on the conduct of her son. The court stated that "the main problem is controlling that boy of hers." Defendant contends that, under the circumstances presented here, she cannot be held accountable for her son's conduct. None of the alleged acts occurred in her presence, and she was not aware that her son was likely to commit such acts. With one exception, she was not informed of any of the alleged conduct until she received the notice of termination. The only incident reported to her was the mattress-jumping incident. When she learned of this activity by her son, she punished him.

In *Chicago Housing Authority v. Rose* (203 Ill. App. 3d at 216-17), pursuant to a search warrant, the police found guns in defendant's apartment. Defendant's brother told police that the guns belonged to him. Defendant testified without contradiction that she was unaware that her brother had brought the guns into the apartment. The court held that, once the Chicago Housing Authority showed that guns were in defendant's apartment, a rebuttable presumption arose that defendant knew of their presence, and the burden then shifted to her to demonstrate a lack of knowledge. However, the court found that defendant's testimony that she did not previously know of the guns' presence was not contradicted, nor was it impeached or inherently improbable and therefore could not be disregarded. The court held that defendant met her burden of establishing lack of knowledge, and her brother's conduct was not attributable to her.

Similarly, in *Hodess*, the court held that, although the conduct of defendant's son in breaking into a neighboring apartment, stealing certain items and hiding them in defendant's apartment was serious, there was no evidence that defendant could have foreseen this conduct or that she acquiesced in it. *Hodess*, 401 Mass. at 696, 519 N.E.2d at 260; see also *Henry v. Wild Pines Apartments* (1987), 183 Ga. App. 491, 359 S.E.2d 237 (uninvited guest shot defendant's friend in her apartment while defendant was away).

■ We agree with defendant that she should not be held accountable for her son's actions under these circumstances. The acts complained of appear to be isolated incidents. All took place within a short time span. There is no evidence that defendant was aware of any of these incidents or that she had reason to believe that her son might commit such acts. Except for the mattress incident, no one informed defendant of her son's conduct. On the one occasion she was so informed, she stated that she punished her son.

We acknowledge plaintiff's argument that Illinois law and public policy encourage parents to exercise control over their children, citing *Robison v. First State Bank* (1986), 144 Ill. App. 3d 991, 993. We note defendant's own testimony that she was required to call for her son several times a day indicates that she did not know where he was much of the time. Nonetheless, under the above cases and Federal regulations, we hold that defendant was not accountable for her son's conduct under the facts presented.

■ Plaintiff further contends, however, that even if defendant is not accountable for her son's conduct, it proved conduct by the defendant herself sufficient to justify termination of her tenancy. Plaintiff points to evidence of an unauthorized person residing in her

apartment and of repeated instances of loud noise, including yelling for her son from her balcony, loud parties, loud television and an apparent argument with an unidentified male.

The trial court apparently placed little weight on these incidents, as it focused primarily on the conduct of Rorey. The court stated specifically, "I believe that under the law *the conduct of the defendant's son*, et cetera [*sic*], so forth, shows repeated minor violations." (Emphasis added.) The court later stated, "The real problem is controlling that son of hers." Nevertheless, the evidence regarding this additional conduct is contained in the record on appeal. We may affirm the judgment of the trial court on a basis not ruled upon by that court if the necessary factual basis for the determination is contained in the record. *American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 21.

We agree, however, with the trial court's apparent conclusion that the additional conduct which plaintiff cites does not support termination of defendant's tenancy. We first note that plaintiff failed to prove that an unauthorized person, namely Mary Dietrich, resided with defendant. The sole evidence which plaintiff introduced on this issue was the speculation of Sue Owens, based on her observation of Dietrich carrying groceries and clothes into the building, and a single chance encounter in the laundry room. Conversely, both defendant and Dietrich categorically denied that Dietrich lived with defendant at any time. Dietrich did testify that she often helped defendant with chores such as laundry and grocery shopping. She often baby-sat for Rorey, even staying with him overnight on one occasion. This testimony is almost entirely consistent with Owens' observations. Plaintiff failed to prove a lease violation on this ground.

Plaintiff did present evidence of several incidents of noise emanating from defendant's apartment. Owens testified to two occasions of defendant yelling for her son, one instance of the television being too loud, one or two loud parties and apparently one argument between defendant and an unidentified male. While a long-standing pattern of such conduct might be grounds for termination, the incidents which Owens described are merely isolated instances. We note that, with one exception regarding the television, there was no evidence of any complaints about any of these incidents until defendant received the notice of termination. As defendant suggests, this fact supports an inference that the alleged conduct was not a very serious disruption of the livability of the building. More importantly, however, we note that, again, the complained-of conduct occurred within a very short time

span and, as no one complained, defendant's testimony that she was unaware that she was disturbing her neighbors is plausible.

"Material noncompliance" requires a pattern of repeated minor violations of the lease, not isolated incidents. (*North Shore Plaza Associates v. Guida* (1983), 117 Misc. 2d 778, ___, 459 N.Y.S.2d 685, 686.) The handful of minor incidents described here, occurring over a short span of time and in the absence of prior notice to defendant that her conduct was disturbing to neighbors, does not establish a pattern of violations.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is reversed.

Reversed.

INGLIS, P.J., and DUNN, J., concur.