SECOND DIVISION    NOVEMBER 10, 1998

No.1-98-0653

MARCIA RUBIN, MICHELLE GORCHOW, ) APPEAL FROM THE

JASON GORCHOW and STEPHEN RUBIN, ) CIRCUIT COURT 

) OF COOK COUNTY

Plaintiffs-Appellants, )

) No. 93 CH 10972

v. )

) THE HONORABLE

JULES LASER, ) THOMAS A. HETT AND

) DOROTHY K. KINNAIRD

Defendant-Appellee. ) JUDGES PRESIDING

JUSTICE COUSINS delivered the opinion of the court:

Marcia Rubin, one of the plaintiffs in this case, is the sole beneficiary of a trust (Mitchell Trust) created under the will of her father, Mitchell Nechtow.  Along with her children, she is also a beneficiary of a trust (Marion Trust) created under the will of her mother, Marion Nechtow.  Jules Laser, the defendant, was the executor of both wills and the trustee for both trusts.  The Mitchell Trust started with about $710,000, and the Marion Trust started with about $240,000.

In 1993, Laser resigned as trustee, and the plaintiffs, Marcia Rubin, her children Michelle and Jason Gorchow and the successor trustee, Steven Rubin, brought suit alleging multiple improprieties in Laser's administration of the trusts. 

The trial court granted summary judgment for Laser on three counts of the complaint.  The plaintiffs appeal the award of summary judgment on those counts, pursuant to the trial court's 
finding under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) that there was no just reason to delay an appeal. 

The plaintiffs contend that the trial court erred by holding that: (1)  Laser's duty of loyalty as a trustee did not obligate him to make additional purchases for the trust of a particular stock in which Laser and the trust already had holdings; (2)  the plaintiffs' claim for breach of a stock redemption agreement had been released by an agreement with Laser; and (3) the release had not been procured by duress.

BACKGROUND

The count
s that form the basis of this appeal all involve Laser's investments, both personal and in his capacity as trustee, in the First State Bank and Trust Company of Park Ridge (Park Ridge Bank).

In 1975, Laser became aware of an opportunity to buy the Park Ridge Bank.  He put together a group of investors, mainly from among his law partners, who could provide the $1.1 million in capital needed.  He bought 7,450 shares of stock for himself and 1,603 shares for one the trusts, representing 7.11% and 1.53% of the outstanding shares, respectively.  Financing for the deal was put together by Continental Bank.  The plaintiffs allege that Laser used the trust assets as collateral for the loans.  In any case, soon after the loans were approved, Laser moved the bulk of the trust assets to the Continental Bank.

Laser and his partners received a certain amount of stock as compensation for the services rendered in connection with the purchase of Park Ridge Bank.  The amount of stock going to each individual partner was calculated on the basis of the amount of stock that the person had previously purchased.  The plaintiffs allege that Laser used the stock he purchased on behalf of the trust in calculating the amount of stock to which he was entitled as compensation.

  From the beginning, Laser and his partners had planned to put together a bank holding company.  To get approval for this from the Federal Deposit Insurance Corporation, the investors needed more capital.  The plaintiffs claim it was in consideration of Laser's deposit of the trust assets in Continental Bank that Continental Bank assisted with the financing for the holding company as well as subsequent Park Ridge Bank stock purchases by Laser.

The investors signed a voting trust agreement, which gave Laser and his law partners authority to vote on behalf of the entire group.  Laser and his partners adopted a no-dividend policy in order to promote long-term growth. 

The investors also signed a stock redemption agreement.  This agreement provided that any shareholder who wished to sell his or her stock was required first to offer it to the other shareholders.  The other shareholders could purchase a 
pro rata
 portion of the available stock based on their current holdings.  In this way, the balance of power among the remaining shareholders could be maintained. 

Laser acted as chairman of the board of directors of the bank and received substantial compensation for his services.  His law firm handled Park Ridge Bank's normal legal work.

The Park Ridge Bank was operated as a private, closely held corporation.  The plaintiffs claim that Laser controlled the market for shares.  Laser bought stock from other shareholders; however, the sellers did not tell the others as mandated by the stock redemption agreement.  Laser neither informed the beneficiaries of these purchases nor bought any stock for the trusts, although it is alleged that he knew the stock was worth much more than he was paying for it.  It is also alleged that Laser violated the stock redemption agreement by selling stock without notifying other shareholders.

Plaintiffs allege that Laser failed to segregate the trust funds starting in the late 1970s.  After 1987, they contend, he stopped  filing separate tax returns for the two trusts and treated the Mitchell Trust as containing all the funds.  Plaintiffs contend there has been some difficulty reconstructing where all the funds were due to Laser's failure to keep records and failure to render an accounting.

In 1993, Laser withdrew as trustee and was succeeded by Stephen Rubin, one of the plaintiffs in this suit.  The record is unclear concerning which trust owned the bank stock. The plaintiffs allege that Laser has given them contradictory answers on this issue.

Following Laser's withdrawal, Marcia Rubin wished to remove the trust assets from Park Ridge Bank and invest them in a way that would provide more immediate return.  She contends that she needed the money in order to provide for her children, one of whom is handicapped.  She looked into the possibility of a sale of the bank.  She was informed that there was a limited "window of opportunity" to sell the bank at an advantageous price.  Laser, the largest shareholder, was opposed to a sale.  In order to induce Laser to go along with a sale, other shareholders executed a release of all claims relating to the stock redemption agreement.  Stephen Rubin insisted upon an exception to the release indicating that Laser would still be liable for any breaches of his duty as trustee.

Mr. Rubin signed the release as trustee of the "Maria Gorchow Rubin" trust since this was the name on the stock certificates.    Mr. Rubin signed the exception agreement accompanying the release as trustee of the "Marion Trust."

The plaintiffs filed this action in December 1993 alleging many violations of Laser's duties as trustee.  Laser moved for summary judgment on certain claims regarding Park Ridge Bank.  Count VII  of the second amended complaint alleged that Mr. Laser breached his fiduciary duty by not obtaining  a 
pro rata
 share for the trusts of the bank stock that he bought after the initial acquisition.  Count VIII alleged that Laser violated the stock redemption agreement by buying stock without notifying the trust beneficiaries.  Count IX alleged that Laser violated the agreement by selling stock without notifying the trust beneficiaries and other shareholders. Count X alleged that Laser breached his fiduciary duty by not enforcing the trusts' rights under the stock redemption agreement.

The trial judge granted summary judgment on count VII on the grounds that Mr. Laser had no duty to buy any additional bank stock for the trusts.  He granted summary judgment as to counts VIII and IX because these claims were covered by the release.  He denied summary judgment on count X, however, on the grounds that the claim for breach of fiduciary duty fell within the scope of the exception to the release.

The plaintiffs appeal the grant of summary judgment on counts VII, VIII and IX.  As to count VII, they claim that the court erred because the bank stock acquired was "so connected" with the trust property that Mr. Laser had a duty to buy at least some for the trust.  As to counts VIII and IX, they claim that the release should not have been held effective because it was obtained through duress.  Furthermore, they claim that there is a material issue of fact as to whether the trust on whose behalf the release was signed was, in fact, the trust that held the stock.

For the reasons that follow, we affirm the judgment of the trial court.

DISCUSSION 

I 

The plaintiffs claim that Laser violated his duty of loyalty as a trustee by making further purchases of bank stock for himself after the original acquisition without purchasing any for the trusts.  Their theory of liability is that, by purchasing bank stock both in his capacity as a trustee and as an individual, Laser created a conflict of interest situation in which he was obligated to favor the trusts' interests above his own.  The facts of this case, they contend, created enough of a connection between the trust property and the additional stock acquired by Laser that Laser had a duty to purchase some additional stock for the trusts.

The primary case relied upon by the plaintiffs is 
Wootten v. Wootten
, 151 F.2d 147 (10th Cir. 1945).  In 
Wootten
, the defendant held a third of the shares of a ranch corporation individually and a third in trust for the widow and children of his late brother. The remaining shares became available and the defendant bought them at a substantial discount without informing the beneficiaries, even though the trust had sufficient assets to participate in the transaction.  The defendant thereby obtained majority control for himself.

The court held that, as a general principle, a trustee must not compete with the trust in the acquisition of property. 
Wootten
, 151 F.2d at 150. In particular, the court held that the property in question was "so connected with the trust property or the scope of his duties as fiduciary" that it was disloyal for him to purchase it for himself, even if he did not have a general obligation to purchase it for the trust. 
Wootten
, 151 F.2d at 150.

A similar case cited by the plaintiffs is 
Renz v. Beeman
, 589 F.2d 735 (2d Cir. 1978).  In 
Renz
, a trust was structured to divide control of a family business evenly between two branches of a family. There was an indication that the settlors wished the business to remain under joint control.  The defendant trustee, without notifying the beneficiaries, purchased a large block of stock that gave her side of the family absolute control over the corporation.  

The court held that the trustee had a fiduciary obligation to preserve the balance of control in the corporation.  Control of the corporation was a trust asset that the trustee had appropriated for herself. 
Renz
, 589 F.2d at 746.  The court, however, specifically reserved the question of whether a smaller purchase would have violated the trustee's duty of loyalty.  
Renz
, 589 F.2d at 746.  

Wootten
 and 
Renz
 stand for the proposition that it may violate a trustee's duty of loyalty to take control of a corporation away from his or her trust through purchasing stock.  These cases do not hold that the mere purchase of stock in the same corporation is a breach of the duty of loyalty.  One author puts the distinction thus:

"Ordinarily, at least, a fiduciary's acquisition in his individual capacity of a mere minority of the shares of stock of a corporation in which he also holds stock as a fiduciary, his individual stock interest not being large enough to enable him to control the corporate enterprise, even if used in combination with the stock which he holds for the trust estate, would seem not to constitute any breach of his duties to the trust estate.

However, where a trustee who holds a substantial proportion of the stock of a corporation in his fiduciary capacity and an equal amount therein in his individual right procures for himself individually additional stock in such corporation and thereby upsets the balance of control as between himself individually and his trust estate in respect of the corporation whose stock is so held, there may well be grounds for holding that one half of the additional stock so acquired by the trustee individually must be deemed to have been acquired by him on behalf of the trust estate, upon the theory of a constructive trust." Annotation, 
Ownership by Trustee, Executor, or Guardian in His Own Right of Stock in a Corporation in Which He Also Holds Stock in His Fiduciary Capacity
, 161 A.L.R. 1038, 1040 (1946).

Trustees have a duty not to put themselves in a position where their interests will be in conflict with those of the trust beneficiaries.  
Renz
, 589 F.2d at 748.  Trustees do not, however, have a general duty not to own stock in the same company as the trust.  
Conant v. Lansden
, 341 Ill. App. 488, 502, 94 N.E.2d 594, 601 (1950), 
rev'd in part
, 409 Ill. 149, 98 N.E.2d 773 (1951).  This, without more, does not create a conflict of interest.

The general principle  that trustees may not enter into substantial competition with their trusts in the acquisition of property is well established. Restatement (Second) of Trusts §170, Comment j (1959); 
June Oil & Gas, Inc. v. Andrus
, 506 F. Supp. 1204, 1208 (D. Colo. 1981). However, in order for the acquisition to be in competition with the trust, in 
Wootten
's terms, there must be a "connection" between the trust and that property.  Whether a personal investment by a trustee brings the trustee into conflict with the trust is a case-by-case determination; nevertheless, it is a question of law.  
Estate of McCredy
, 323 Pa. Super. 268, 294, 470 A.2d 585, 599 (1983).

One application of the 
Wootten
 principle is that a trustee may be obligated to purchase property for the trust rather than for himself or herself if that property would make the assets currently owned by the trust more valuable.  For instance, if a trust contains a remainder, the trustee should buy the life estate for the trust rather than himself or herself.  
In re Robbins' Estate
, 94 Minn. 433, 103 N.W. 217 (1905). Or if there is an encumbrance on the beneficial interest of a trust, the trustee should buy it for the trust rather than himself or herself. 
Home Federal Savings & Loan Ass'n v. Zarkin
, 89 Ill. 2d 232, 243, 432 N.E.2d 841 (1982).

A trustee also may be impermissibly competing with the trust in the acquisition of property if there is some indication that the settlor, in establishing the trust, wished the trust to have that property.  
Renz
, 589 F.2d at 746.  It is impermissible for a trustee to compete with the trust by purchasing property that he or she has undertaken to buy for the trust. 5 W. Fratcher, Scott on Trusts §504, at 534 (4th ed. 1989).

However, in order for the 
Wootten
 principle to apply, there must be some such connection between the stock to be purchased and the trust property.  The only connection in the instant case is that both the trustee and the trust already had some stock in the same bank.  The only reason that the beneficiaries wish that Laser had purchased stock for the trust instead of himself is that the investment turned out to be prof
itable.  This is not enough of a connection.  Had Laser's purchase of stock divested the trust of control of the corporation, his actions might have amounted to a breach.  But the trust was only a small minority shareholder, and Laser's purchases neither changed the trust's position nor made Laser the majority shareholder. 

It is important to note what is 
not
 at issue in count VII.  It does not involve Laser's duty under the stock redemption agreement.  That is covered by counts VIII and IX.  It does not involve the original acquisition of the bank.  Other counts deal with that episode.  The alleged basis of liability is not that Laser used trust assets as collateral in obtaining stock.  That is the gravamen of count III. 

II

The plaintiffs next claim that the trial court was mistaken in granting summary judgment against them on counts VIII and IX.  Counts VIII and IX allege that Laser breached the stock redemption agreement by buying the stock of other shareholders without notifying the trust beneficiaries and selling stock without notifying the trust beneficiaries, respectively.  

The trial court also dismissed a count in the original complaint that was essentially the same as count VIII in the second amended complaint.  The grounds for this dismissal was that the stock redemption agreement by its terms only imposed an obligation on those 
selling
 stock.

The plaintiffs argue in response that Laser violated the implied duty of good faith and fair dealing under the agreement by not telling them about the purchases in question.  However, the doctrine of good faith and fair dealing does not serve to import new obligations into a contract.  It merely controls how the obligations stated within the contract are to be performed.  
Baxter Healthcare Corp. v. O.R. Concepts, Inc.
, 69 F.3d 785, 792 (7th Cir. 1995).

Once again it is important to note what is 
not
 pled as a basis of liability under counts VIII and IX.  The grounds for liability is not that Laser violated his fiduciary duty in making the stock sales and purchases in question.  That charge is covered by counts VII and X.  The claims under counts VIII and IX spring solely from the stock redemption agreement itself. 

The first respect in which the plaintiffs contend that the trial judge erred in granting summary judgment on counts VIII and IX was in deciding that there was not an issue of material fact on the question of whether the trust on behalf of which Stephen Rubin executed the release was in fact the trust that owned the stock.

Mr. Rubin signed the release on behalf of the "Marcia Gorchow Rubin" trust.  The plaintiffs claim that this is ambiguous and could refer to either the Mitchell Trust or the Marion Trust.  According to the record, the reason that Mr. Rubin signed it this way was because that was how the trust was designated on the stock certificates.  Laser's position is that the stock was owned by the Mitchell Trust.  However, the exception agreement is signed on behalf of the "Marion Trust."  Since the exception agreement and the release are legally one document, the plaintiffs claim, the Marion Trust and the "Marcia Gorchow Rubin" trust must be one and the same.  Thus, they argue, the trust committed to the release was not the trust that owned the stock.

However, there are several reasons why plaintiffs' contention is not compelling.  On the one hand, Marcia Rubin is the sole beneficiary of the Mitchell Trust, and accordingly it would make sense to call that trust the "Marcia Gorchow Rubin" trust.  On the other hand, it would make no sense to sign the release agreement on behalf of a trust that owned no stock in the bank, since if the trust had no stock, it had no rights to release.  Furthermore, the release contains a recital that all the release parties are shareholders of the bank holding company.  Finally, we note that the stock redemption agreement itself was also signed on behalf of the "Marcia Gorchow Rubin" trust.

Courts construe contracts so as to avoid absurd results.  
Foxfield Realty, Inc. v. Kubala
, 287 Ill. App. 3d 519, 524, 678 N.E.2d 1060, 1063 (1997).  The plaintiffs' interpretation, under which a trust that had no rights signed a release of its rights, would be absurd.  Moreover, contract interpretation is a matter of law.  
Regnery v. Meyers
, 287 Ill. App. 3d 354, 360, 679 N.E.2d 74, 77 (1997).  Thus it was not improper for the court to resolve this question on summary judgment.

III

The plaintiffs also claim that the release should be voidable on the grounds that it was procured by duress.  The supreme court has defined "duress" as "a condition where one is induced by a wrongful act or threat of another to make a contract under circumstances which deprive him of the exercise of his free will." 
Kaplan v. Kaplan
, 25 Ill. 2d 181, 185, 182 N.E.2d 706 (1962).

The type of duress alleged by the defendants would properly be characterized as "economic duress" or "business compulsion."  Economic duress occurs where "undue or unjust advantage has been taken of a person's economic necessity or distress to coerce him into making the agreement."  12 Ill. L. & Prac. 
Contracts
 §142 (1983).  These circumstances must be sufficiently extreme to overbear the will of the plaintiff.  
Higgins v. Brunswick Corp.
, 76 Ill. App. 3d 273, 277, 295 N.E.2d 81 (1979).  The plaintiffs have not pled sufficient facts to show any extreme financial distress of which Laser supposedly took advantage.  Stephen Rubin, the party who executed the agreement, moreover, is a lawyer and was represented by counsel in the negotiation of the release.  There is no indication that his will was overborne. 

The plaintiffs also have not pled a sufficient basis to conclude that Laser's conduct on this particular point was wrongful.  Mere hard bargaining does not rise to the level of duress.  
Alexander v. Standard Oil Co.
, 97 Ill. App. 3d 809, 815, 423 N.E.2d 578, 582 (1981). The record suggests that the shareholders disagreed concerning the propitious time to sell the bank.  However, this was not wrongful.

CONCLUSION

For the reasons above,we affirm the judgment of the trial court.  Nonetheless, we stress that this ruling concerns only three narrow issues in a very extensive case.  The ruling should not be held to reflect on the adequacy of the many other counts.  

Affirmed.

RAKOWSKI and McNULTY, JJ., concur.