3-00-0902

No. 3-00-0902

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2001

THE HOUSING AUTHORITY

OF JOLIET,

Plaintiff-Appellant,

v.

PATRICIA KEYS,

Defendant-Appellee.

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of the 12th Judicial Circuit Will County, Illinois

No. 00-LM-915

Honorable

Raymond A. Bolden

Judge, Presiding

_________________________________________________________________

JUSTICE LYTTON delivered the opinion of the court:

_________________________________________________________________

The plaintiff, Housing Authority of Joliet (Housing Authority), brought a forcible entry and detainer action against defendant, Patricia Keys, to evict Keys from her residence.  The trial court held that public housing tenants cannot be evicted for the criminal activities of guests or family members over whom they have no control.  We affirm.

Keys is a tenant in federally subsidized public housing managed by the Housing Authority.  Her adult grandson, Jeffrey Campbell, was named as a household member on her lease and resided with her but was not a party to the lease.

On April 19, 2000, Devon Johnson was robbed and shot at Keys' residence.  Campbell and Angela McDonald, Keys' adult niece who did not reside with Keys, were arrested and subsequently confessed.  When the crime occurred, Keys was a patient in the hospital.

A month later, the Housing Authority served Keys with a notice to terminate her tenancy.  The Housing Authority then filed a forcible entry and detainer action against her.  The trial court entered judgment in favor of Keys, and the Housing Authority moved to reconsider.  The trial court denied the motion, holding that a tenant "without notice and without control over guests or family members cannot lose his or her lease hold [
sic
] interest in the property."  The Housing Authority appeals.

Keys has not filed an appellee's brief.  Even so, because the record is short and the claimed error is such that we can easily decide the issue without the aid of an appellee's brief, we will address the merits of the appeal.  
First Capitol Mortgage Corp. v. Talandis Construction Corp.
, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976).

We must decide whether Keys' eviction was (1) authorized by the Housing Authority's lease with her; (2) mandated by federal law; or (3) unconstitutional as fundamentally unfair and violative of due process.

I

We first consider whether the Housing Authority's lease with Keys supports her eviction. The Housing Authority contends that Campbell and McDonald's criminal acts, committed without Keys' knowledge and in her absence from the residence, constitute a violation of the lease.  The Housing Authority bases this contention on an addendum to Keys' lease which states, in part, "Tenant, any member of the Tenant household, a guest, or another person under Tenant's control shall not engage in or permit * * * [a]ny criminal activity * * * on or off the premises * * *."  A breach of this portion of the lease is grounds for eviction.

Thus, the Housing Authority can evict a tenant if it can show: (1) criminal activity; (2) occurring on or off the premises of the public housing; (3) by the tenant, a "member of the [t]enant['s] household, a guest, or another person under [t]enant's control."

Here, the first two factors were not contested.  Campbell and McDonald confessed to the crime that took place in Keys' residence.  Further, the crimes were perpetrated by a member of Keys' household and a guest.  Thus, we must determine the meaning and context of the word "control" in the lease.

A

The Housing Authority argues that "control" means only the tenant's ability to determine who has access to the residence.  It contends that household members and guests are 
per se
 under a tenant's control.

A lease is a type of contract governed by the rules that govern contracts generally.  
Midland Management Co. v. Helgason
, 158 Ill. 2d 98, 103, 630 N.E.2d 836, 839 (1994).  As with any contract, a reviewing court must determine and effectuate the meaning of the plain and ordinary language of a lease 
de novo
.  
Piasecki v. Liberty Life Assurance Co. of Boston
, 312 Ill. App. 3d 872, 873, 728 N.E.2d 71, 72 (2000).

When construing a lease, we must ascertain the intention of the parties from the language of the lease, giving the words used their common and generally accepted meaning.  
Chicago Housing Authority v. Rose
, 203 Ill. App. 3d 208, 216, 560 N.E.2d 1131, 1136 (1990).  Control is defined as "power or authority to guide or manage: directing or restraining domination" (Webster's Third New International Dictionary 496 (1986)).  A tenant who does not at least have knowledge of a household member's or a guest's criminal activity does not have "control" over that household member or guest.  
American Apartment Management Co. v. Phillips
, 274 Ill. App. 3d 556, 566, 653 N.E.2d 834, 840 (1995).

We reject the limited definition urged upon us by the Housing Authority and believe that control implies some power to restrain or direct on the part of the tenant.  Other Illinois cases agree that simply granting access to the residence is not sufficient to allow eviction.  See 
American Apartment Management
, 274 Ill. App. 3d at 566, 653 N.E.2d at 840 (a tenant must have knowledge of a guest's criminal activity before that guest can be considered under the tenant's control); 
Chicago Housing Authority v. Rose
, 203 Ill. App. 3d 208, 560 N.E.2d 1131 (1990) (to "permit" illegal activity in her apartment, the tenant must have knowledge of the activity and assent or agree to its commission); 
Mid Northern Management v. Heinzeroth
, 234 Ill. App. 3d 240, 599 N.E.2d 568 (1992) (tenant did not permit child to commit acts that disturbed neighbors when she did not even know of the incidents involved); 
Kimball Hill Management Co. v. Roper
, 314 Ill. App. 3d 975, 733 N.E.2d 458 (2000) (tenant's knowledge of or involvement in criminal activity necessary before she can be found to have permitted it); 
Diversified Realty Group, Inc. v. Davis
, 257 Ill. App. 3d 417, 628 N.E.2d 1081 (1993) (tenant did not breach lease term forbidding her to permit unlawful activities in the unit when she had no knowledge of her son's possession of drug paraphernalia).

In this case, Keys was a patient in the hospital when the crime occurred and had no knowledge of its commission.  Because Keys had no restraining influence over Campbell and McDonald at the time they committed the crime, the trial court's finding they were not "under [t]enant's control" was not against the manifest weight of the evidence.

Moreover, to construe control as narrowly as the Housing Authority suggests would allow for absurd results.  For instance, a tenant becomes a candidate for eviction when she allows into her home an insurance salesperson who, unbeknownst to the tenant, is carrying a concealed weapon.  This court will not construe a contract to obtain such absurd results.  
Rubin v. Laser
, 301 Ill. App. 3d 60, 68, 703 N.E.2d 453, 459 (1998).

B

The lease says that "any member of the Tenant household, a guest, or another person under Tenant's control shall not engage in or permit * * * [a]ny criminal activity."  The Housing Authority argues that the phrase "under [t]enant's control" does not relate back to household members or guests, because it modifies only the words "another person."

When a lease provision can be plausibly read in more than one way, that provision is ambiguous.  
American Apartment Management
, 274 Ill. App. 3d at 566, 653 N.E.2d at 840.  Ambiguous lease terms must be construed against the drafter of the lease.  
American Apartment Management
, 274 Ill. App. 3d at 566, 653 N.E.2d at 840.  Where there is any doubt or uncertainty as to the meaning of the language used in a lease, it should be construed most strongly against the lessor and in favor of the lessee.  
Kimball Hill Management Co. v. Roper
, 314 Ill. App. 3d 975, 980, 733 N.E.2d 458, 462 (2000).

In 
American Apartment Management
, the court construed a section 8 federally subsidized housing lease that stated, "'a guest or other person under the Tenant's control shall not engage in or facilitate criminal activity.'"  
American Apartment Management
,  274 Ill. App. 3d at 566, 653 N.E.2d at 840.  The plaintiff contended that the control referred only to "other person" and not to "guest."  The court held that the lease could reasonably be interpreted in that way, but that it could also be construed to mean that a guest also must be under the tenant's control.  Because the lease could be plausibly construed in more than one way, the court held that it was ambiguous.  
American Apartment Management
,  274 Ill. App. 3d at 566, 653 N.E.2d at 840.  Illinois courts have uniformly found similar subsidized or public housing leases to be ambiguous.  See 
Chicago Housing Authority v. Rose
, 203 Ill. App. 3d 208, 560 N.E.2d 1131 (1990) (lease providing that tenant could not permit guns to be brought into the residence did not unambiguously impose strict liability); 
Mid Northern Management, Inc. v. Heinzeroth
, 234 Ill. App. 3d 240, 599 N.E.2d 568 (1992) (lease stating that tenant will not permit acts that will disturb neighbors did not unambiguously provide for strict liability of tenant who did not know of her son's actions).

We agree with the 
American Apartment Management
 court's analysis.  The lease can credibly be interpreted to impose a strict liability on tenants, as the Housing Authority urges.  However, the phrase "under [t]enant's control" can also be read to fairly modify all of the named categories, 
i.e.
, household members, guests, or another person.

Even the Housing Authority's choice of language, "
another
 person under [t]enant's control" (emphasis added), supports a contrary interpretation.  Use of the modifier "another" before "person under [t]enant's control" appears to refer back to the previously referenced persons, namely, household members and guests.

Since we find the lease ambiguous, its terms must be construed against the Housing Authority as the drafter of the lease.  See 
American Apartment Management
,  274 Ill. App. 3d at 566, 653 N.E.2d at 841.  Thus, we find that a tenant must exercise control over household members and guests as well as other persons who engage in criminal activity in order to allow the tenant's eviction.  We agree with the trial court that Keys exercised no control over Campbell and McDonald.

II

A

Next, the Housing Authority argues that federal law requires strict liability of tenants for the criminal acts of their household members and guests.  We will therefore address the Housing Authority's contention that federal law requires Keys' eviction.

The Anti-Drug Abuse Act of 1988 (42 U.S.C. §1437d(l)(6) (Supp. 1999)) requires public housing agencies to utilize leases that:

"provide that any criminal activity that threatens the health, safety, or right of peaceful enjoyment of the premises by other tenants or any drug-related activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy."  42 U.S.C. §1437d(l)(6) (Supp. 1999).

Statutory construction is a question of law that this court considers 
de novo
.  
Town of Serena v. Kelly
, 311 Ill. App. 3d 344, 346, 724 N.E.2d 543, 545 (2000)  The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature; where statutory language is ambiguous, it is appropriate to consider the legislative history to determine this intent.  
Town of Serena
, 311 Ill. App. 3d at 346, 724 N.E.2d at 545.

Though the statutory language is slightly different than the Housing Authority's lease, the issue is the same.  We construe this statutory language much as we did the lease.  The Housing Authority interprets the statute to say that "under the tenant's control" modifies only "other persons."  As discussed in section (I)(B), we believe the words "under the tenant's control" may also be reasonably construed to modify all of the listed categories, 
i.e.
, household members and guests in addition to other persons.  Thus, we find the statutory language ambiguous.

Because it is unclear that Congress intended to punish tenants under these circumstances, we turn to the legislative history.  See 
Town of Serena
, 311 Ill. App. 3d at 346, 724 N.E.2d at 545.  When the statute was amended in 1990, the Senate Committee Report stated, "For example, eviction would not be the appropriate course if the tenant had no knowledge of the criminal activities of his/her guests or had taken reasonable steps under the circumstances to prevent the activity."  S. Rep. No. 101-316, at 179 (1990), 
reprinted in 
1990 U.S.C.C.A.N. 5763, 5941.  Addressing an identical section of the section 8 housing assistance program at the same time, the committee stated, "The Committee assumes that if the tenant had no knowledge of the criminal activity or took reasonable steps to prevent it, then good cause to evict the innocent family members would not exist."  S. Rep. No. 101-316, at __ (1990), 
reprinted in
 1990 U.S.C.C.A.N. 5763, 5889.  It appears that the eviction of innocent tenants was not part of the Congressional scheme.

Nevertheless, the Housing Authority argues that the public policy objectives of this statute will be foiled if it is forced to prove that a tenant had knowledge of the criminal activity.  Crime in public housing projects is a serious problem, a problem that Congress sought to address through the Anti-Drug Abuse Act of 1988 and its subsequent revisions.  
Rucker v. Davis
, 237 F.3d 1113, 1116 (9th Cir. 2001), 
cert.
 ___ U.S. ___, 150 L.Ed.2d 805, 122 S.Ct. 24 (2001).  Housing authorities have the right and responsibility to work to deter and reduce criminal activity by evicting those tenants who engage in criminal activity or turn a blind eye to the criminal activity of family members and guests.  However, the eviction of tenants who have no knowledge of criminal activity can neither deter nor reduce criminal activity.  
Rucker
, 237 F.3d at 1121.

Keys, whom the trial court described as "an elderly woman in a walker, [whose] court appearances had to be scheduled consistent with her appointments for dialysis," is the type of tenant that the senate committee appeared to have in mind when they concluded that "good cause" does not exist to evict innocent tenants without knowledge or control.  S. Rep. No. 101-316, at __ (1990), 
reprinted in
 1990 U.S.C.C.A.N. 5763, 5889.  Keys' eviction will neither impact the safety and well-being of any other tenants in the Housing Authority's housing, nor assist the Housing Authority in deterring future crime and lessening present criminal activity in its public housing.  We do not believe Congress intended 42 U.S.C. §1437d(l)(6) to mandate the eviction of innocent tenants.

B

Decisions of the federal courts interpreting a federal act are controlling on Illinois courts in order to apply the law uniformly.  
Busch v. Graphic Color Corp.
, 169 Ill. 2d 325, 335, 662 N.E.2d 397, 403 (1996).  The United States Court of Appeals for the Ninth Circuit has held that where a tenant could not realistically exercise control over the conduct of a household member or guest due to a lack of knowledge or some other reason, section 1437d(l)(6) does not authorize the eviction of that tenant.  
Rucker v. Davis
, 237 F.3d 1113, 1126 (9th Cir. 2001).  Because this is the only federal decision interpreting this statute, we are bound to follow it.

III

The possible constitutional ramifications of accepting the Housing Authority's interpretation of the statute bear mention.  Penalizing conduct that involves no intentional wrongdoing by an individual can run afoul of the due process clause.  
Scales v. United States
, 367 U.S. 203, 224-25, 6 L. Ed. 2d 782, 799, 81 S. Ct. 1469, 1484 (1961).  Public housing tenants have a property interest in their tenancy.  
Greene v. Lindsey
, 456 U.S. 444, 451, 72 L. Ed. 2d 249, 256, 102 S. Ct. 1874, 1878-79 (1982).  A thorough analysis of the constitutional issues could well find that, as applied here, evicting public housing tenants under these circumstances may be fundamentally unfair and violative of due process.  However, since we have held that neither the lease nor the statute permits the eviction of innocent tenants, we need not reach the constitutional question.  See 
Wolens v. American Airlines, Inc.
, 147 Ill. 2d 367, 589 N.E.2d 533 (1992).

CONCLUSION

The judgment of the circuit court of Will County is affirmed.

Affirmed.

HOMER, P.J., concurs, HOLDRIDGE, J., dissents.

JUSTICE HOLDRIDGE, dissenting;

The question at issue is simply whether Keys was subject to eviction under the terms of her lease when her grandson and his friend committed a crime in the apartment, albeit without Keys' knowledge.  Keys entered into a lease agreement which stated, in relevant part: "Tenant, any member of tenant's household, a guest, or another person under Tenant's control shall not engage in or permit * * * [a]ny criminal activity * * * on or off the premises * * *."  A breach of this portion of the lease is grounds for eviction.  

As the majority notes, it is undisputed that a member of tenant's household (Campbell) and a guest (MacDonald) engaged in criminal activity on the premises.  These uncontested facts should be sufficient to show breach of the lease and support eviction.  However, the majority grafts another requirement onto the lease, one that is clearly not present or intended in the language of the lease.  The majority also requires that the lessee (Keys) have knowledge of the household member's or the guest's criminal activity in order for a breach of the lease to occur.  I find no such requirement.

The majority infers the requirement that the tenant have knowledge of the criminal activity from the juxtaposition of the phrase "under Tenant's control" after the phrase "or another person" in the lease.  The majority finds in the phrase "or another person under Tenant's control" proof that the parties to the lease intended that the tenant would only be subject to eviction if she had actual knowledge of the criminal activity of her household member or guests.  I disagree.  The language "under tenant's control" has nothing to do with knowledge; it merely indicates persons who are on the premises by permission of the tenant.  

The lease language clearly mandates that Keys, as the tenant, is responsible for the actions of: (1) herself; (2) members of her household; (3) guests; and (4) any other person under her control.  Her responsibility is to insure that none of these enumerated people engage in "criminal activity, non-criminal activity, and/or anti-social activity or behavior, on or off the premises, which interferes or has the potential to interfere with the health, safety, and/or peaceful enjoyment of the premises by other residents."  In other words, the tenant vouches for the conduct of the individuals she allows on the premises.  If her household members, her guests, or any other person under her control breached the peace, Keys could be evicted.  Nothing in the plain language of the lease indicated that Keys or any other tenant vouched only for the conduct of which she or they had actual knowledge.  

The majority's interpretation makes no sense in view of the stated rationale for the lease provision, 
i
.
e
., protecting the health, safety and/or peaceful enjoyment of the property by the other tenants.  I see no unfairness in enforcing the lease provision as written.  Indeed, I find the lack of enforcement of the lease unfair to the other tenants who have a right to expect that steps be taken to evict tenants who permit people onto the premises who then interfere with the health, safety and peaceful enjoyment of the premises.     

I would reverse the circuit court and remand for further proceedings.